IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY PALMER, | ) | CASE NO.  4:22-CV-01958-CAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN THOMAS WATSON, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Jeffrey Palmer ("Palmer" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Palmer is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Palmer,* Mahoning County Court of Common Pleas Case No. 2018-CR-00660.  For the following reasons, the undersigned recommends that the Petition be DENIED.

# Table of Contents

I.    Summary of Facts ................................................................................................................. 2

II.   Procedural History ............................................................................................................. 4

III.  Exhaustion and Procedural Default .................................................................................. 18

IV.   Non-Cognizable Claim ....................................................................................................... 38

V.    Review on the Merits .......................................................................................................... 39

VI.   Conclusion .......................................................................................................................... 58

OBJECTIONS .......................................................................................................................... 58

1

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Palmer's conviction as follows:

{¶2} T.B. lived in Boardman, Ohio along with her three children. In May of 2015, T.B. met Appellant through an online dating site where he went by the name "Israel." Appellant moved into T.B.'s apartment sometime in June or July of 2015 and lived there until May or June of 2016.

{¶3} T.B.'s child, A.B., was ten years old when Appellant moved into the apartment. T.B. was employed as a home health aide. Appellant was unemployed. At trial in this matter, T.B. stated that she worked two hours in the morning from 8:00 to 10:00 a.m. and two hours in the evening, from around 8:00 to 10:00 p.m. She explained that while she only worked two hours at a time, she was away from home longer than that because she used public transportation to get to and from work. She worked seven days a week and was off every other weekend. While T.B. was at work and when she ran errands, Appellant was home alone with her children. T.B. noticed that A.B.'s behavior began to change after Appellant moved in. She became quiet and kept to herself. T.B. questioned A.B. about her change in behavior but A.B. denied that there was a problem. T.B. testified that her sexual relationship with Appellant was not typical. Eventually, the relationship ended and Appellant moved out. Subsequently, Appellant asked T.B. to move with her children into his house in Cleveland, but she refused.

{¶4} In April of 2018, A.B. told her mother that Appellant had been sexually abusing her the entire time he lived in their apartment. T.B. took the child to the emergency room to be examined. A.B. told her mother that Appellant had different types of sex with her multiple times a day, every day. She said the abuse occurred while T.B. was at work. At trial, A.B. testified that at night, while getting ready to shower or getting her clothes out for the next day, Appellant would comment on her clothing and compliment A.B. on her appearance. A.B. testified that she stopped wearing nightgowns and wore pajamas because Appellant's comments made her feel uncomfortable. A.B. testified that the abuse almost always occurred in her mother's room because it was the only room with a lock

on the door, however, Appellant abused her multiple times in other rooms while her mother and the younger children were sleeping. Appellant offered to buy her toys and snacks as the abuse continued but threatened A.B. not to tell her mother. A.B. said she never told anyone about the abuse while Appellant was living in the apartment. She testified that the abuse lasted for about one year until Appellant moved out. After Appellant moved to Cleveland, he continued to contact A.B. and talked about having her family move in with him. She finally told her mother after she had a nightmare about her mother leaving her.

{¶5} In Appellant's direct appeal we summarized the testimony offered at trial as follows:

> The testimony of A.B. and her mother provided additional details of the sexual acts. A.B. testified that when she was ten years old, appellant came to live with them, and he watched her and her siblings while her mother worked. (Tr. at 175).
>
> She testified that the first time that appellant touched her, she was on the couch in the living room on her tablet when he started asking her about the birds and the bees. (Tr. at 179). She stated he told her to get up and go to her mom's room, he shut the door, laid her down on the bed, and touched her vaginal area. (Tr. at 180). She testified that appellant's conduct then escalated each time, such as taking out his penis and rubbing it against her "private part." (Tr. at 81). She testified that they went into her mother's room because it was the only door that locked. While initially she stated that appellant did not put his penis or his fingers inside her vagina, she testified that it hurt when appellant touched her "private part." (Tr. at 183-185). She later testified that it would hurt when appellant kept forcing his penis inside of her vagina and he did this at least ten times. (Tr. at 190-193). She also testified that sometimes when he rubbed his fingers on her "privates," it would hurt and this happened more than five times. (Tr. at 193). She stated that appellant put his mouth on her "private area" more times than she could count, but then narrowed it to more than 10 times but less than 15 times. (Tr. at 191-192). She also provided detail about times when the acts would occur, such as once when she came inside to get a glass of water while her siblings were outside and appellant called her into her mother's room, pulled her pants down, bent her over the bed, and put his penis "between her legs." (Tr. at 185). She further testified that sexual acts would occur twice a week and sometimes more than once per day. (Tr. at 191). A.B. also related that appellant would rub Vaseline on his penis and told her that if he could continue with her, he would never touch her mom again. (Tr. at 189).

3

*State v. Palmer,* 7th Dist. Mahoning No. 19 MA 0108, 2021-Ohio-4639, ¶ 21-22.

{¶6} Appellant was indicted by direct presentment to the Mahoning County Grand Jury on twelve counts of rape of a minor under the age of thirteen and one count of gross sexual imposition of a minor under the age of thirteen. A jury trial began on September 3, 2019. Along with the testimony of A.B. and her mother, the State's witnesses included a neighbor, Boardman Township police officers, a social worker employed by Akron Children's Hospital, a nurse practitioner at Akron Children's Hospital in the Child Advocacy Center, and a second social worker from the Child Advocacy Center who had interviewed A.B. Appellant was the only witness to testify for the defense.

{¶7} At the conclusion of the trial, the jury returned guilty verdicts on all counts. Appellant was sentenced to 10 years to life in prison on each of the twelve rape convictions and 5 years on the gross sexual imposition conviction. The court ran Counts 1, 2 and 3 for rape concurrently with each other; Counts 4, 5 and 6 for rape concurrently with each other but consecutively to Counts 1, 2, and 3; Counts 7, 8 and 9 for rape concurrently with each other but consecutively to Counts 1, 2 and 3, and Counts 4, 5, and 6; Counts 10, 11 and 12 for rape concurrently with each other; but consecutively to Counts 1, 2, and 3, 4, 5 and 6, and 7, 8, and 9; and Count 13 for gross sexual imposition concurrently with all sentences. In total, Appellant was sentenced to 40 years to life in prison.

*State v. Palmer*, 2022-Ohio-2339, 2022 WL 2443273, at **1-2 (Ohio Ct. App. June 28, 2022).

## II. Procedural History

### A. Trial Court Proceedings

On June 28, 2018, the Mahoning County Grand Jury indicted Palmer on twelve counts of rape in violation of O.R.C. § 2907.02(A)(1)(b) (Counts 1-12) and one count of gross sexual imposition in violation of O.R.C. § 2907.05(A)(4)(C)(2) (Count 13).  (Doc. No. 7-1, Ex. 1.) The indictment specified that all acts occurred  between May 1, 2015, through June 30, 2016, and the victim was less than 13 years old.  (*Id.*) Palmer pleaded not guilty.  (Doc. No. 7-1, Ex. 2.)

On July 11, 2018, Palmer requested a bill of particulars.  (Doc. No. 7-1, Ex. 3.)  On July 26, 2018, the trial court ordered the State to furnish a bill of particulars setting forth the nature of the offenses charged and the conduct alleged to constitute the offenses charged.  (Doc. No. 7-1, Ex. 4.)  On July 18, 2019, the

4

State provided a bill of particulars, explaining that the range of dates were the dates that Palmer moved in and out of A.B.'s residence and specifying that Palmer digitally penetrated A.B.'s vagina, forced her to engage in vaginal and anal intercourse, and performed oral sex on her, at least three times as to each act, while he lived in A.B.'s home. (Doc. No. 7-1, Ex. 5.)

The case proceeded to a jury trial on September 3, 2019. (Doc. No. 7-1, Ex. 6.) On September 5, 2019, the jury returned its verdict, finding Palmer guilty on all counts. (*Id.*)

On September 9, 2019, Palmer filed a motion for a new trial. (Doc. No. 7-1, Ex. 7.) The State opposed the motion. (Doc. No. 7-1, Ex. 8.) On September 30, 2019, the trial court overruled Palmer's motion for a new trial. (Doc. No. 7-1, Ex. 9.)

On September 9, 2019, and September 23, 2019, the state trial court held a sentencing hearing. (Doc. No. 7-1, Ex. 10.) The trial court sentenced Palmer to ten years to life on each count for Counts 1-12 and five years on Count 13. (*Id.*) The trial court ordered Counts One, Two, and Three were to run concurrently to each other. (*Id.*) Counts Four, Five, and Six were to run concurrently to each other but consecutively to Counts One, Two, and Three. (*Id.*) Counts Seven, Eight and Nine were to run concurrently to each other but consecutively to Counts One, Two, and Three and Counts Four, Five, and Six. (*Id.*) Counts Ten, Eleven, and Twelve were to run concurrently to each other but consecutively to Counts One, Two, and Three, Counts Four, Five, and Six, and Counts Seven, Eight, and Nine. (*Id.*) Count Thirteen was to run concurrently to all cases. (*Id.*) The trial court sentenced Palmer to a total of 40 years to life in prison. (*Id.*) The trial court determined Palmer was a Tier III sexual offender and notified him of his duties to register as such. (Doc. No. 7-1, Ex. 11.)

**B.      Direct Appeal**

Palmer, through counsel, timely appealed to the Seventh District Court of Appeals. In his appellate brief, Palmer raised the following assignments of error:

5

I.      Appellant Was Denied Due Process Because the Indictment, Bill of Particulars, Jury Instructions, and Verdict Failed to Differentiate Between the Different Types of Conduct Said to Constitute Rape.

II.     The trial court erred and denied Appellant due process of law, equal protection and the right to have justice administered without denial when it failed to instruct the jury on the lesser offenses of gross sexual imposition. U.S. CONST., amend. XIV, OHIO CONST., art. I, §§1, 2, and 16.

III.    Appellant was denied due process of law and liberties protected by the Ohio Constitution because there was insufficient evidence as to the counts alleging oral rape.

IV.    Appellant was denied due process of law and equal protection of the law, and his rights guaranteed by the Ohio Constitution, when the state was permitted to introduce impermissible and inflammatory "other acts" evidence.

V.     Appellant was denied a fair trial because of the ineffectiveness of his trial counsel.

VI.    Appellant was denied due process when the State was permitted to impermissibly bolster the testimony of the victim by using "expert" medical testimony to bolster the victim's testimony.

VII.   Appellant was denied due process and the effective assistance of counsel because there were repeated references made to the child as the "victim," to which trial counsel failed to object.

VIII.  The trial court erred by failing to record all sidebars as required by OHIO CRIM. R. 22, thus depriving Appellant the liberty secured by U.S. CONST., amend XIV and OHIO CONST., art. I, §§1, 2 and 16.

IX.    Appellant was denied a fair trial because of the effect of cumulative errors.

(Doc. No. 7-1, Ex. 12.) On January 26, 2021, the State filed a responsive brief. (Doc. No. 7-1, Ex. 13.) On March 8, 2021, Palmer filed a reply brief. (Doc. No. 7-1, Ex. 14.) On August 19, 2021, Palmer filed a citation to supplemental authority. (Doc. No. 7-1, Ex. 15.)

On September 29, 2021, the Court of Appeals affirmed the judgment of the trial court. (Doc. No. 7-1, Ex. 16.) *See also State v. Palmer,* No. 19 MA 108, 2021-Ohio-4639, 2021 WL 6276315 (Ohio Ct. App. Sept. 29, 2021).

6

On November 15, 2021, Palmer, through counsel, filed a timely notice of appeal with the Supreme Court of Ohio. (Doc. No. 7-1, Ex. 17.)  In his memorandum in support of jurisdiction, Palmer raised the following propositions of law:

I. The Fourteenth Amendment to the United States Constitution, and Ohio Constitution, Article I, Sections 1, 2, 10, and 16 require enough differentiation between multiple counts charging rape, when the date range on each charge is the same and when the language in each count is virtually identical, and when the bill of particulars fails to differentiate between counts, to allow an accused to fairly defend himself and to avoid double jeopardy.

II. When an accused question the effectiveness and adequacy of counsel, it is the duty of the trial judge to inquire into the complaint, and to make such inquiry a part of the record. Sixth and Fourteenth Amendments, United States Constitution, and Ohio Constitution, Article I, Sections 10 and 16; *State v. Deal*, 17 Ohio St.2d 17, 17, 244 N.E.2d 742 (1969), modified.

III. It is a denial of Due Process and the freedoms secured by Ohio Constitution, Article I, Section 16 in a trial where a child is repeatedly referred to as the "victim," and where trial counsel failed to object.

(Doc. No. 7-1, Ex. 18.)

On December 28, 2021, the Ohio Supreme Court declined jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4). (Doc. No. 7-1, Ex. 19.)

## C.     Post-Conviction Filings

On February 1, 2021, while his direct appeal was pending, Palmer, *pro se*, filed a petition to vacate or set aside the judgment of conviction or sentence. (Doc. No. 7-1, Ex. 20.) Palmer argued his trial counsel was ineffective for: misleading him into signing a speedy trial waiver; failing to investigate or prepare for trial; failing to call an expert; failing to object to the identical counts of the indictment; failing to object to the state's use of peremptory challenges; and failing to convey a plea offer. (*Id.*) Palmer also asserted that trial counsel's cumulative errors denied him a fair trial. (*Id.*) Palmer requested an evidentiary hearing, appointment of counsel, and expert assistance. (*Id.*) Palmer attached notes from his trial counsel, police records, medical records, and a screenshot of a social media page, in addition to other exhibits. (*Id.*)

On March 11, 2021, the State moved for judgment on the pleadings.  (Doc. No. 7-1, Ex. 21.)  On April 23, 2021, Palmer filed a response in opposition (Doc. No. 7-1, Ex. 22), to which the State replied. (Doc. No. 7-1, Ex. 23.)

On May 4, 2021, the trial court granted the State's motion for judgment on the pleadings and dismissed Palmer's petition for post-conviction relief.  (Doc. No. 7-1, Ex. 24.)  The trial court held that the claims were barred by the doctrine of *res judicata*, and Palmer failed to produce competent, credible evidence outside the record to support his claims.  (*Id.*)  The trial court also denied Palmer's motions for an evidentiary hearing, appointment of counsel, and expert assistance.  (*Id.*)

On June 3, 2021, Palmer, *pro se*, appealed the dismissal of his petition for post-conviction relief. (Doc. No. 7-1, Ex. 25.)  In his appellate brief, Palmer raised the following assignments of error:

I.     Appellant was denied due process and the effective assistance of counsel, a violation of the 5, 6, and 14th Amendment to the U.S. Constitution; Section 16 Article 1 of the Ohio Constitution, when trial counsel misleads Appellant into unknowingly and involuntarily waived his speedy trial right.

II.    Appellant was denied effective assistance of counsel, a violation of due process of the 6th and 14th Amendment to the United States const. and Section 16, Article 1 of the Ohio Const., when trial counsel failed to conduct a reasonable investigation to determine possible defenses.

III.   Trial counsel was constitutionally ineffective for failing to present expert testimony to rebut the prosecution's case and expert testimony, and failing to provide expert testimony regarding Petitioner's erectile dysfunction and medication side effects, violating his 6th and 14th Amendments of due process.

IV.    Petitioner was denied due process and the effective assistance of counsel when his trial attorney failed to raise a timely carbon copy objection on the 12 rape counts pursuant to Crim.R.12(C) in violation of his 6th and 14th Amendment, Section 16, 10, art 1.

V.     Petitioner was denied effective assistance of counsel, a violation of due process of the 6th and 14th amendment of the U.S. Constitution and section 10 and 16 of the Ohio Constitution, when counsel failed to use information in discovery to make a defense and assist him in preparing the case before trial.

VI.    Petitioner was denied effective assistance of counsel, a violation of due process of the 6th and 14th amendments to the U.S. Constitution and Section 16 Art. 1 of

the Ohio Constitution, when trial counsel failed to argue and make a record that the state had exercised its peremptory strikes in a racially discriminatory manner.

VII.    Appellant was denied due process and the effective assistance of counsel, a violation of the 6th and 14th Amendment to the U.S. Constitution and Section 16 Article 1 of the Ohio Constitution, when counsel failed to convey the state's plea offer to Appellant.

VIII.   Appellant was denied a fair trial because of cumulative errors.

(Doc. No. 7-1, Exhibit 30.)  On September 16, 2021, the State filed a responsive brief.  (Doc. No. 7-1, Ex. 31).  On October 25, 2021, Palmer filed a reply.  (Doc. No. 7-1, Ex. 32.)

On June 28, 2022, the Court of Appeals affirmed the judgment of the trial court.  (Doc. No. 7-1, Ex. 33.)  *See also State v. Palmer,* No. 21 MA 52, 2022-Ohio-2339, 2022 WL 2443273 (Ohio Ct. App. June 28, 2022).  The state appellate court held that Palmer's claims were barred by the doctrine of *res judicata* because they could have been or were raised on direct appeal and Palmer failed to provide evidence outside the record to support them.  (*Id.*)

On August 8, 2022, Palmer, *pro se*, filed a timely notice of appeal with the Supreme Court of Ohio. (Doc. No. 7-1, Ex. 34.)  In his memorandum in support of jurisdiction, Palmer raised the following propositions of law:

I.      Counsels [sic] waiver of a speedy trial right without a defendants [sic] knowledge and consent violates his 6th and 14th Amendment rights of the U.S. Const.

II.     Counsel must conduct a prompt and reasonable investigation or render ineffective assistance.

III.    Failure to consult with and or provide an expert in the particular case amounts to constitutionally ineffective assistance.

IV.     Failure to raise a timely carbon copy objection pursuant to Crim.R.12(C)(2) is ineffective assistance.

V.      Failure to use readily available evidence to impeach witnesses is ineffective assistance.

VI.     Failure to timely object to racially motivated preemtory [sic] strikes violates the right to effect [sic] counsel.

9

VII.     Failure to timely convey plea offers to a client is prejudicial representation.

VIII.    Cumulativeness of an attorneys [sic] deficient performace [sic] bears a substantial level of ineffectiveness that cannot be underminded [sic].

(Doc. No. 7-1, Ex. 35.)

On September 27, 2022, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 7-1, Ex. 36.)

**D.     Application to Reopen Appeal under Ohio App. R. 26(B)**

On December 28, 2021, Palmer, *pro se*, filed an application to reopen his appeal pursuant to Ohio App. Rule 26(B).  (Doc. No. 7-1, Ex. 37.)  Palmer argued that his appellate counsel was ineffective for the following reasons:

I.      Palmer argues that appellate counsel was ineffective when he failed to argue that trial counsel failed to object to the admission and eliciting of hearsay, and testimonial statements, in violation of Palmer's 5th, 6th, and 14th Amendments to the U.S. Constitution and Art. 1, Section 10 of the Ohio Constitution.

II.     Petitioner was denied the effective assistance of appellate counsel, a violation of due process of the 6th and 14th Amendments to the U.S. Constitution and section 16 Art. 1 of the Ohio Constitution, when counsel failed to raise on appeal trial counsels [sic] failures to object to prosecutorial misconduct and the trial courts [sic] abuse of discretion in admitting inadmissible testimony.

III.    Palmer argues that it was also ineffective assistance of appellate counsel not to argue on appeal that trial counsel failed to object to the states [sic] misconduct in closing argument when she stated that everybody is in some big conspiracy to, again, as he put it, railroad him, just like Gorsuch lied. The police lied.

IV.     Palmer also argued that appellate counsel should have raised on appeal that is [sic] Constitutional 6th and 14th Amendments to due process and effective counsel were violated when trial counsel failed to request a mistrial after the judge at trial violated his right to the presumption o [sic] innocents [sic] by asking the jury the prejudicial question "Were any of you formerly a juror in the same case or in a civil case brought against the defendant for the same act?" (Trial Tr.22).

V.      Palmer was also denied effective counsel, a violation of the 6th and 14th Amendments, when trial counsel failed to object to the states [sic] cross examination which compelled Palmer to testify to the veracity and credibility of the multiple witnesses against him.

10

VI.    Palmer argues that his counsel intentionally prejudiced him by informing the jury pool, "Okay, You've been a corrections officer.  You know – I keep nothing back – You'll wonder why.  He is in jail because this is a serious offense, and the bonds are high.  And he could not make bond.  That is the reason he's incarcerated.  I don't want you to think any other reason.  So when you see deputies walking with him, that's the reason.  They have a duty to be with him.  They have to be everywhere with him because technically he's a prisoner of the jail." (Trial. Tr. 82-83.)

VII.    Palmer also raises the issue that appellate counsel failed to raise trial counsel's ineffective representation due to counsel's failure to object to prosecutorial conduct in closing argument.

VIII.    Petitioner was denied effective appelate [sic] counsel when counsel failed to raise the issue that trial counsel was ineffective for failing to object to prosecutorial misconduct, a violation of due process of the 6th and 14th Amendments to the U.S. Constitution and section 16 Art. 1 of the Ohio Constitution.

IX.    Palmer also raises the issue that, without objection from trial counsel, nurse Janet Gorsuch was permitted to repeat testimonial hearsay statement that were entirely for forensic purposes rather than for diagnosis or treatment.

X.    Appellate counsel was ineffective for failing to argue the courts [sic] abuse of discretion violated his right to due process through the 6th and 14th Amendments by permitting the following. Q: "Were there changes in your sex life with the defendant?" [Zena: "Objection."] A. "Yes." [The Court: "Overruled."] A. "It was just different. Like he wasn't sexually into me like your boyfriend supposed to be. Like he wasn't the same like how you would be sexually." (Trial Tr. 145).

(*Id.*)  The State opposed reopening.  (Doc. No. 7-1, Ex. 38.)

On July 18, 2022, the court of appeals denied Palmer's application to reopen his appeal on the merits.

(Doc. No. 7-1, Ex. 39.)  *See also State v. Palmer,* No. 19 MA 108, 2022-Ohio-2643, 2022 WL 3077235

(Ohio Ct. App. July 18, 2022).

Palmer failed to timely appeal the state appellate court's decision to the Ohio Supreme Court.

**E.    Federal Habeas Petition**

11

On October 11, 2022,[1] Palmer filed a Petition for Writ of Habeas Corpus in this Court and asserted

the following grounds for relief:

**GROUND ONE:**  In violation of due process of U.S. Const., amend. XIV and Ohio Const., art. I § 1, 2, 10 and 16 the state failed to state the different conduct said to constitute rape.

> **Supporting Facts**: Neither the indictment, bill of particulars, jury instructions, verdict forms, nor the verdict itself distinguished between several types of conduct said to constitute rape. i.e., digital penetration, fellatio, anal penetration, or penise [sic] to vagina penetration. Neither was sufficient to alert the jury, the defendant, nor the court as to which counts related to which alleged act of rape. In closing argument the state conceded that there'd been no evidence of fellatio, anal penetration, digital penetration, or any other kind because the declarant AB said neither had happened at trial. Yet, none of the counts were dismissed. The state treated them as interchangeable and urged the jury to do the same. The failure to differentiate left no indication of which counts the jury may have reasonably found Palmer not guilty of even upon the state conceding which form of crimes were not proven. So if the jury chose to find Palmer not guilty of anal penetration, digital penetration, or any other form of rape in line with what the evidence of the declarant failed to establish, the jury had no way of knowing which counts to dismiss. This issue of the undifferentiated counts, and the failure to provide the specific nature of the acts said to support each count also deprived Palmer of the fair opportunity to avoid double jeopardy.

**GROUND TWO:**    The court denied appellant due process and equal protection of the law when it failed to instruct the jury on the lesser offenses of gross sexual imposition.

> **Supporting Facts:**    The declarant testified that although appellant would sometimes hurt her body when he'd "touch" her inappropriately, that he had never at any point put anything inside of her. (T.p. 182,185). Then, only after being led by the state, did she give inconsistent testimony that suggested that vaginal penetration did occur. (T.p.186). But even upon the contradicting testimony, she never alleged where the penetration supposedly occurred. Palmer was charged with 12 counts of rape and 1 count of gross sexual imposition. And while AB stated that Palmer had never put his penis, finger, or any other object inside of her anus or vagina, nurse Gorsuch claimed that AB told her that Palmer had put his penis inside her vagina and inside her anus. (T.p.282).

**GROUND THREE:**  Appellant was denied due process of law because he was convicted of 12 counts of rape where the eveidence [sic] was insufficient to support rape.

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until October 31, 2022, Palmer states that he placed it in the prison mailing system on October 11, 2022.  (Doc. No. 1 at 17.)  Thus, the Court will consider the Petition as filed on October 11, 2022.

**Supporting Facts:** While sexual conduct is defined as vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any body part or instrument into the vaginal or anal opening of another- the law nonetheless requires evidence of penetration. In this case, the evidence meant to constitute rape was only estimations, estimations where it was the state who alleged any penetration and not the declarants [sic] own testimony.

**GROUND FOUR:**  Petitioner was denied due process and equal protection of the law where the state was permitted to introduce irrelevant inflammatory "other act" evidence.

**Supporting Facts:** The state sprinkled Palmer's trial with inflammatory, non-relevant evidence which had nothing to do with the issues on trial, namely, rape and gross sexual imposition. They included things like how Palmer's sex life supposedly changed with his ex-girlfriend, the declarants mother Tanisha; whether Palmer disciplined or mistreated Tanisha's children by locking them out the house, being dismissive toward certain kids while favoring others; and how the declarants [sic] behavior and activities allegedly changed from how she was years before meeting Palmer in comparison with after he began to live at their home, and so forth.

**GROUND FIVE:**  When an accused questions the effectiveness and adequacy of counsel, it is the duty of the trial judge to inquire into the complaint, and to make such inquiry a part of the record. Petitioner Palmer complained of the adequacy of his trial counsel to the trial judge in a letter in June of 2019. Palmer also complained directly to counsel in a letter. After receiving both letters, counsel entered a motion to withdraw as counsel, asserting irreconcilable differences between he and Palmer. A hearing was held the same day where counsel was permitted to state his version of whatever issues. After asking Palmer what he had to say, the judge cut him off before he could utter one complete sentence. The judge failed to make a good faith investigation into whether there had been such a dissolution of the attorney-client relationship that they could not work effectively so that Palmer could receive effective counsel and therefore have a fair trial. Please consult exhibits 2 and 3 of Palmer's post-conviction evidence. This ground also asserts that counsel failed to object to and request a limiting instruction to prejudicial and immaterial other acts evidence, and that he failed to file a motion to suppress Palmer's statements to police.

**GROUND SIX:**  Petitioner was denied due process when the state was permitted to impermissibly permitted to bolster the testimony and vouch for the credibility of the declarant in the guise of a medical "diagnosis" of sexual abuse. While the rules of law and evidence may permit an expert to give such testimony in the form of an opinion, an actual diagnosis which states that a declarant has in fact been raped is always prejudicial and reversible conduct. Especially so where no such findings to support such diagnosis existed. And counsel failed to object to this prejudicial violation of petitioner. Though appellate counsel did raise this ground on direct appeal, he for some reason did not raise this issue in the memorandum for jurisdiction to the state Supreme Court. This claim was also raised in petitioners [sic] 26(B) motion to reopen. The claim was said by the court to have been argued already on direct appeal by appellate counsel, and that it had no merit.

13

**GROUND SEVEN**:  Petitioner was denied due process and the effective assistance of counsel because the state was permitted to make repeated references to the declarant as "the victim", to which trial counsel failed to object to.

**GROUND EIGHT**:  The trial court erred by failing to record all sidebars as required by C.R.22, thus depriving Petitioner of the liberty secured by U.S. CONST., amend. XIV. While it is true that trial counsel should have objected to the failure to record sidebars in the trial proceedings, certain obligations fall upon the trial judge even where there was no objection. Denial of the creation of a complete record for review on appeal is a denial of meaningful access to the courts guaranteed by our Constitution. While appellate counsel did initially raise this ground on direct appeal, he failed to raise this issue in the memorandum for jurisdiction to the Ohio Supreme Court for some reason unbeknownst to appellant.

**GROUND NINE**:  Petitioner Palmer was denied due process and the right to a fair trial because of the effect of cumulative errors. The nature of these types of cases and the duty to safeguard against improper convictions has been discussed elsewhere. Under the doctrine of cumulative error, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." State v. Powell,132 Ohio St.3d *273. Palmer did not have a fair trial, and in the interest of true justice, we cannot allow to pass uncorrected any number of errors which, perhaps in the mind of the Court, do not themselves constitute reversible error, but certainly taken togther [sic] must.

(Doc. No. 1.)

On January 12, 2023, Warden Thomas Watson ("Respondent") filed the Return of Writ.  (Doc. No. 7.)

On March 1, 2023, Palmer filed a motion for leave to amend his habeas petition.  (Doc. No. 9.)

On March 17, 2023, Respondent filed an opposition to Palmer's motion for leave to amend.  (Doc. No. 10.)

On July 24, 2023, after moving for and receiving extensions of time to reply, Palmer filed his reply in support of his motion for leave to amend his Petition.  (Doc. No. 17.)

On August 17, 2023, the Court granted Palmer's motion for leave to amend.  (Doc. No. 20.)  The Court ordered Palmer to file a Traverse within thirty days of the date of the Order, in which he should address each of the grounds raised in his original Petition, as well as the additional claims raised in his

14

motion to amend.  (*Id.* at 19.)  The Court further ordered Respondent to file a response within thirty days of the filing of the Traverse and present a complete response to Palmer's new claims and address all arguments relative thereto, including the statute of limitations, any applicable arguments regarding procedural default, and the merits.  (*Id.*)

On September 21, 2023, Palmer filed a motion for extension of time seeking a 90-day extension to file his Traverse (Doc. No. 21), which the Court granted.  (Non-document Order dated September 22, 2023.)

On December 4, 2023, Palmer filed a motion for stay and abeyance because he was transferred to the Cuyahoga County Jail (Doc. No. 22), which the Court denied.  (Doc. No. 23.)

On January 29, 2024, Palmer filed a motion for extension of time seeking a 180-day extension to file his Traverse.  (Doc. No. 25.)

On February 12, 2024, Palmer filed an Amended Petition and asserted the following grounds for relief: (1) trial counsel intentionally misled Petitioner to unknowingly waive his right to a fast and speedy trial; (2) trial counsel failed completely to conduct any investigation; (3) trial counsel failed to present any rebuttal expert testimony; (4) trial counsel failed to timely object to the carbon copy charges; (5) trial counsel failed to impeach adverse witnesses with available impeachment evidence; (6) trial counsel failed to object to the State's racially motivated jury strike; (7) trial counsel completely failed to convey the prosecution's plea to client; (8) Petitioner was denied a fair trial and due process due to cumulative errors; (9) trial counsel failed to object to the admission of testimonial hearsay; (10) trial counsel failed to object to the admission and eliciting of an actual diagnosis of abuse from an expert witness; (11) trial counsel failed to object to the State's improper closing argument which suggested Petitioner was guilty because he was prosecuted and indicted; (12) trial judge prejudicially eroded Petitioner's presumption of innocence right by asking a highly misleading and incriminating question to jurors; (13) trial counsel failed to object to Petitioner being repeatedly compelled to either call other witnesses liars or to call himself the liar in the case; (14) trial

15

counsel was prejudicially ineffective for having unnecessarily informed the jury of Petitioner's pretrial incarceration; (15) the State's Golden Rule argument reprehensibly impaired Petitioner's right to a fair trial; (16) trial counsel failed to object to hearsay being asserted for its truth value; (17) the State was erroneously permitted to introduce statements that were hearsay and did not meet a hearsay exception rule; and (18) the trial judge abused its discretion by permitting over objections improper testimony regarding Petitioner's past sexual moments.  (Doc. No. 27.)  Palmer argued the first eight grounds were presented in his petition for post-conviction relief and were "only a portion of the claims he argued to have added to his original habeas petition."  (*Id.* at 4.)  Palmer argued grounds nine through eighteen were presented in his 26(B) Application and "are also claims Petitioner argued to have added to his original habeas petition."  (*Id.*)

On February 13, 2024, the Court granted in part and denied in part Palmer's motion for extension of time, ordering Palmer to file his Traverse by May 13, 2024.  (Non-document Order dated February 13, 2024.)

On May 8, 2024, Palmer filed a motion for extension of time seeking a 90-day extension to file his Traverse.  (Doc. No. 28.)

On May 9, 2024, the Court granted in part and denied in part Palmer's motion for extension of time, ordering Palmer to file his Traverse by June 27, 2024.  (Non-document Order dated May 9, 2024.)

On June 27, 2024, Palmer filed a motion for extension of time seeking a 90-day extension to file his Traverse.  (Doc. No. 30.)  The Court granted Palmer's motion for extension of time, ordering Palmer to file his Traverse by September 25, 2024, and warned Palmer that no further extensions of time would be granted. (Non-document Order dated June 27, 2024.)

On September 27, 2024, Palmer filed a motion for extension of time seeking a 45-day extension to file his Traverse.  (Doc. No. 32.)

On September 30, 2024, given the information presented in the motion for extension of time, the Court granted Palmer's motion, ordered Palmer to file his Traverse by November 14, 2024, and again warned Palmer that no further extensions would be granted. (Non-document Order dated September 30, 2024.)

On November 15, 2024, Palmer filed motion for extension of time seeking a 30-day extension to file his Traverse. (Doc. No. 33.) The Court granted the motion for extension of time and ordered Palmer to file his Traverse by December 30, 2024. (Non-document Order dated November 15, 2024.) The Court again warned Palmer that no further extensions would be granted. (*Id.*) The Court noted it had granted multiple extensions of time for Palmer to file his Traverse given the circumstances presented in his previous motions. (*Id.*) The Court warned Palmer that if he was unable to file a Traverse by December 30, 2024, no Traverse would be allowed. (*Id.*)

On January 10, 2025, Palmer filed a second Motion to Amend. (Doc. No. 34.)

On February 6, 2025, after seeking and receiving an extension of time to respond, Respondent filed an opposition to Palmer's second Motion to Amend. (Doc. No. 36.)

On March 3, 2025, Palmer filed a motion for extension of time to file his Traverse. (Doc. No. 38.)

On March 4, 2025, the Court granted in part and denied in part Palmer's motion for extension of time, ordering Palmer to file his Traverse by April 18, 2025. (Non-document Order dated March 4, 2025.)

On March 26, 2025, the Court denied Palmer's second Motion to Amend (Doc. No. 34). (Doc. No. 39.) The Court ordered that Palmer was to file a Traverse by April 18, 2025, as previously ordered. (*Id.*) If Palmer failed to file a Traverse by April 18, 2025, no Traverse would be allowed. (*Id.*)

On April 30, 2025, Palmer filed a motion for extension of time of at least 90 days to file his Traverse. (Doc. No. 40.) That same day, the Court granted in part the motion for extension of time. (Non-document Order dated April 30, 2025.) The Court gave Palmer until June 1, 2025, to file his Traverse. (*Id.*) The

17

Court explained it had granted multiple extensions of time to Petitioner to file his Traverse given the circumstances presented in his previous motions. (*Id.*) Out of an abundance of caution, as it appeared that as of April 11, 2025, Palmer had not received the Court's March 26, 2025 Order denying his motion to amend, the Court granted Palmer one final extension of time. (*Id.*) The Court warned Palmer that if he was unable to file a Traverse by June 1, 2025, no Traverse would be allowed, and any filing would be stricken. (*Id.*)

On June 25, 2025, Palmer filed a Traverse. (Doc. No. 42.) The postmarked envelope bears a date of June 18, 2025. (Doc. No. 42-1.)

As Palmer failed to file his Traverse by June 1, 2025, as ordered, after multiple extensions, the Court STRIKES Palmer's belated Traverse and shall not consider it herein.

### III. Exhaustion and Procedural Default

#### A.      Legal Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the

18

procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n.28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

20

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

**B.    Application to Petitioner**

**1.    Ground One**

In Ground One, Palmer argues he was denied due process in violation of the Fourteenth Amendment of the U.S. Constitution and Article 1 of the Ohio Constitution when the State "failed to state the different conduct said to constitute rape."  (Doc. No. 1 at 5.)

Respondent argues that this claim is procedurally defaulted because Palmer failed to object to the "undifferentiated counts."  (Doc. No. 7 at 22.)

Because Palmer failed to timely file a Traverse as ordered, and the Court struck his untimely filing, Respondent's arguments are uncontroverted.

On direct appeal, Palmer raised an argument regarding the allegedly undifferentiated counts.  (Doc. No. 7-1, Ex. 12.)  In its decision, the state appellate court found Palmer had waived this argument at the trial level and conducted a "plain error" review of the issue:

> {¶7}  Appellant asserts that his due process and double jeopardy protections were violated by having 12 identical counts presented in the indictment. He contends that this denied him a fair opportunity to defend against those charges and to avoid double jeopardy because there was no way to determine the evidence that the jury relied upon to convict him on all rape counts. He asserts that the jurors therefore had no idea which count they were considering or whether each of them were considering the same type of sexual conduct for each particular count.

21

{¶8} Appellant relies on *Valentine v. Konteh,* 395 F.3d 626 (6th Cir. 2005) for support. There, Valentine was indicted on 20 identical counts of child rape and 20 identical counts of felonious sexual penetration of a child. The indictment alleged that the offenses occurred between March 1, 1995 and January 16, 1996, mimicked the language of the statutes, and identified the victim's birthdate. The bill of particulars stated that the offenses occurred at the family home. The minor was the only witness to testify and she stated that Valentine forced her to perform fellatio on "about" 20 occasions, he digitally penetrated her vagina on "about" 15 occasions, and he anally penetrated her on "about" 10 occasions. The minor altered the numbers during cross-examination. The jury convicted Valentine on all counts and he was sentenced to 40 consecutive life terms.

{¶9} On appeal, the Eighth District Court of Appeals affirmed all of the rape convictions, but only 15 of 20 of the felonious sexual penetration counts. *Valentine*, 395 F.3d 626. The court found no evidence to support five of the latter counts. *Id.*

{¶10} Valentine filed a federal habeas corpus petition asserting that he was denied due process because he was tried and convicted on an indictment that did not specify dates and did not distinguish between conduct on any specific date. The district court granted the petition and found that the indictment violated due process because its identical language in each count failed to notify Valentine of the crimes with reasonable certainty so that he could protect himself against double jeopardy. *Id.* at 630-631. The district court relied upon *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), where the United States Supreme Court outlined the criteria that an indictment must contain in order to be found sufficient. *Valentine*, 395 F.3d at 630-631. The *Russell* Court determined that an indictment is sufficient if it (1) contains the elements of the charged offenses, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy. *Russell*, 369 U.S. at 763-764. While acknowledging that the federal right to a grand jury indictment has never been found to apply to the states, the Sixth Circuit cited cases applying the due process rights of the indictment elements in *Russell* to state criminal indictments. *Valentine*, 395 F.3d at 631 (citations omitted).

{¶11} Applying *Russell* in *Valentine*, the Sixth Circuit held that Valentine's rights to due process and double jeopardy were violated. *Valentine*, 395 F.3d at 632. The Court explained that the wide date range set forth in the indictment was sufficient, but there were no distinctions between each set of 20 counts for each offense because Valentine was charged for 2 criminal acts that each occurred 20 times, rather than for 40 separate criminal acts. *Id.* The Court found that the prosecution did not present the factual bases for 40 separate acts in either the indictment or in evidence at trial. *Id.* at 633. The Court noted that at trial, the child victim

described "typical" abusive behavior by Valentine and testified that the "typical" abuse occurred 15 or 20 times. *Id.* The Court found that the jury would not be able to consider each count on its own and could not have found Valentine guilty of counts 1-5, but not counts 6-20, because there was no differentiation between these sets of counts. *Id.* The Sixth Circuit held that Valentine would therefore not be able to adequately defend against some of the charges without defending against all of the charges and could not distinguish between the charges. *Id.* The Court also held that Valentine would be unable to protect himself against double jeopardy because he could be punished multiple times for the same offense. *Id.* at 634.

{¶12} Here, appellant acknowledges that this Court does not follow *Valentine*. However, he asserts that our reasons for rejecting *Valentine* are "less than persuasive." He posits that *Valentine* was not based on a direct challenge under the United States or Ohio Constitutions, but was based upon the much higher standard delineated in federal habeas corpus law. Appellant contends that in *State v. Billman*, 7th Dist. Monroe Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774, we "misperceived" *Valentine's* constitutional analysis because we held that it applied the Fifth Amendment provisions regarding grand jury indictments, which did not apply to the Ohio Grand Jury indictment requirement. He asserts that *Valentine* relied upon the double jeopardy clause of the Fifth and Fourteenth Amendments, and no case has rejected *Valentine's* constitutional reasoning.

{¶13} Appellant adds that his right to present a defense is also hindered by allowing "such vague and duplicative allegations" with no corroborative evidence. He reasons that A.B. testified that she was sexually assaulted multiple times a day when her mother was at work, but no daycare records, mother's employment records, or A.B.'s school records were offered. Appellant asserts that since all 12 counts against him were identical, he was left without the ability to determine when, where, or what allegations were alleged against him and he could not offer evidence showing A.B. was in school or daycare when the alleged assaults occurred, or that her mother worked more or different hours than she testified.

{¶14} A person accused of a felony in Ohio is "entitled to an indictment setting forth the 'nature and cause of the accusation' pursuant to Section 10, Article I of the Ohio Constitution." *State v. Moats,* 7th. Dist. Monroe No. 14 MO 0006, 2016-Ohio-7019, quoting *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985). The Ohio General Assembly has defined a sufficient indictment as one:

(A) [t]hat is entitled in a court having authority to receive it, though the name of the court is not stated; * * *

23

(B) * * * that it was found by a grand jury of the county in which the court was held, * * *

(C) [t]hat the defendant is named, * * *

(D) [t]hat an offense was committed at some place within the jurisdiction of the court, * * *

(E) That the offense was committed at some time prior to the time of finding of the indictment * * *

R.C. 2941.03.

{¶15} R.C. 2941.04 allows two or more offenses to be charged in a single indictment. R.C. 2941.05 indicates that each count of an indictment:

> Is sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. It may be in the words of the section of the Revised Code describing the offense or declaring the matter charged to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is charged.

{¶16} The indictment need not demonstrate underlying facts that are not elements of the offenses because this is the function of the bill of particulars. *State v. Pepka*, 125 Ohio St.3d 124, 2010-Oho-1045, 926 N.E.2d 611, ¶ 23.

{¶17} The State should supply specific dates in response to a bill of particulars or demand for discovery with regard to an alleged offense where it possesses such information. *State v. Sellards,* 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985) (due process not violated when State cannot be more exact with specific dates unless defendant demonstrates prejudice). Moreover, "when the state allows open file discovery, a bill of particulars is not required." *State v. Oliver*, 7th Dist. Mahoning No. 07 MA 169, 2008-Ohio-6371, ¶ 38; *see also State v. McQueen*, 7th Dist. Mahoning No. 08 MA 24, 2008-Ohio-6589, ¶ 24.

{¶18} The indictment in this case is sufficient. It identified the proper court, indicated that it was a presentment to the Mahoning County Grand Jury, and it named appellant and A.B. It also informed appellant of the offenses charged against him, stated the jurisdiction where the offenses were committed, and the range of dates of the acts, which showed that they occurred before the indictment. The indictment also tracked the language of the rape and GSI statutes, included a range of dates during which the offenses occurred, and indicated A.B.'s birthdate.

24

{¶19} As we have held, indictments that charge sexual offenses against children do not need to specify the exact date of the alleged abuse if the State establishes that the offense was committed within the time frame alleged because specific dates and times are not elements of the offenses charged. *See State v. Billman*, 7th Dist. Monroe Nos. 12 MO 3, 12 MO 5, 2013–Ohio–5774, ¶ 30*; State v. Yacov*, 8th Dist. No. 86674, 2006–Ohio–5321, ¶ 17; *State v. Gus*, 8th Dist. No. 85591, 2005–Ohio–6717. Further, "[t]here is no inherent defect in an indictment that charges a defendant with repetition of the same crime over a defined period of time." *Id.* at ¶ 33. We also explained that many child victims are not able to remember exact dates and times, especially where the crimes involve a repeated course of conduct over an extended period. *Billman* at ¶ 30, citing *State v. Mundy*, 99 Ohio App.3d 275, 296, 650 N.E.2d 502, (2d Dist.) (1994). "The problem is compounded" where, as here, "the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse." *Billman* at ¶ 30, citing *State v. Robinette*, 5th Dist. No. CA–652, 1987 WL 7153, *3 (Feb. 27, 1987). An exception exists when failing to provide specific dates "results in material detriment to the accused's ability to fairly defend himself, as where the accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the interval specified." (Internal citations omitted.). *Billman, supra*, at ¶ 30, citing *Yacov* at ¶ 18. That did not occur in this case since appellant asserted that he was not living in the home or in the area during the time that A.B. stated that the offenses occurred. Thus, we find that the indictment is sufficient.

{¶20} The bill of particulars in this case is also adequate. It identified that the range of dates provided were the dates that appellant moved in and out of A.B.'s residence. It identified the address as where they resided and where the offenses occurred. It also identified A.B. and her birthdate, and specifically stated that appellant digitally penetrated her vagina, forced her to engage in vaginal and anal intercourse, and performed oral sex on her, at least three times as to each act, while he lived in A.B.'s home. It also identified the proper statutes.

{¶21} The testimony of A.B. and her mother provided additional details of the sexual acts. A.B. testified that when she was ten years old, appellant came to live with them, and he watched her and her siblings while her mother worked. (Tr. at 175). She testified that the first time that appellant touched her, she was on the couch in the living room on her tablet when he started asking her about the birds and the bees. (Tr. at 179). She stated he told her to get up and go to her mom's room, he shut the door, laid her down on the bed, and touched her vaginal area. (Tr. at 180).

{¶22} She testified that appellant's conduct then escalated each time, such as taking out his penis and rubbing it against her "private part." (Tr. at 181). She testified that they went into her mother's room because it was

25

the only door that locked. While initially she stated that appellant did not put his penis or his fingers inside her vagina, she testified that it hurt when appellant touched her "private part." (Tr. at 183-185). She later testified that it would hurt when appellant kept forcing his penis inside of her vagina and he did this at least ten times. (Tr. at 190-193). She also testified that sometimes when he rubbed his fingers on her "privates," it would hurt and this happened more than five times. (Tr. at 193). She stated that appellant put his mouth on her "private area" more times than she could count, but then narrowed it to more than 10 times but less than 15 times. (Tr. at 191-192). She also provided detail about times when the acts would occur, such as once when she came inside to get a glass of water while her siblings were outside and appellant called her into her mother's room, pulled her pants down, bent her over the bed, and put his penis "between her legs." (Tr. at 185). She further testified that sexual acts would occur twice a week and sometimes more than once per day. (Tr. at 191). A.B. also related that appellant would rub Vaseline on his penis and told her that if he could continue with her, he would never touch her mom again. (Tr. at 189). Based upon the indictment, bill of particulars, and A.B.'s testimony, sufficient details were provided to separate the acts, the number of acts, and where and when the acts occurred.

{¶23} Moreover, appellant did not object to the indictment or to the bill of particulars, or allege any defects by pretrial motion. He also did not seek more information about the charges. Without an objection, we conduct a plain error review. A three-part test is used to determine whether plain error exists. *State v. Parker*, 7th Dist. Mahoning No. 13 MA 161, 2015-Ohio-4101, ¶ 12, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. Third, the error must have affected 'substantial rights.'" *Parker* at ¶ 12, citing *Billman*, 7th Dist. Monroe Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774, ¶ 25. Plain error does not exist here.

{¶24} As appellant acknowledges, we are not bound by *Valentine* and do not follow *Valentine*. *State v. Miller*, 7th Dist. Mahoning No. 17 MA 120, 2018-Ohio-3430; *State v. Adams*, 7th. Dist. Mahoning, No. 13 MA 130, 2014-Ohio-5854, 26 N.E.3d 1283*; State v. Moats*, 7th Dist. Monroe, No. 14 MO 0006, 2016-Ohio-7019; *State v. Billman*, 7th Dist. Monroe, Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774; *State v. Clemons*, 7th Dist. Belmont No. 10 BE 7, 2011-Ohio-1177. 2020-Ohio-633, ¶ 11-16.

{¶25} One of our most recent decisions declining to follow *Valentine* is *State v. Thomas*, 7th Dist. Mahoning No. 18 MA 0025, 2020-Ohio-633, ¶ 14-17. There, Thomas was convicted of 19 counts of rape of a minor child. *Id.* The indictment charged him with 16 counts of rape and 3 counts of rape by force or threat of force. The first 16 counts identically charged that

26

"on or between August 12, 2011 and August 11, 2015," Thomas engaged in sexual conduct with the victim, the victim was less than 13 years old, and he compelled the child victim to submit by force or threat of force. *Id.* at ¶ 9. The other three counts charged that "on or between August 12, 2015 and February 29, 2016," he engaged in sexual conduct with the victim and compelled him to submit by force or threat of force. *Id.* On appeal, Thomas relied upon *Valentine* and argued that the indictment violated his due process and double jeopardy protections. He asserted that the "carbon copy" charges of multiple counts of child rape failed to put him on notice of the charges or protect him from any future prosecution for the same offenses.

{¶26} In deciding not to follow *Valentine*, we looked to our previous explanation in *State v. Triplett*, 7th Dist. Mahoning No. 17 MA 0128, 2018-Ohio-5405:

> As we recently stated in *Miller*, this court does not follow *Valentine. State v. Miller*, 7th Dist., 2018-Ohio-3430, [118] N.E.3d [1094], ¶ 30, *citing, e.g., State v. Adams*, 7th Dist., 2014-Ohio-5854, 26 N.E.3d 1283, ¶ 36; *Billman,* 7th Dist. Monroe Nos. 12 MO 3, 12 MO 5 at ¶ 34-36; *State v. Clemons*, 7th Dist. Belmont No. 10 BE 7, 2011-Ohio-1177, 2011 WL 861847 (finding no due process violations and opining potential double jeopardy concerns can be cured if they arise in the future). This type of argument would improperly protect a defendant who committed multiple instances of the same offense against a child in his care. *Miller,* 7th Dist., 2018-Ohio-3430, [118] N.E.3d [1094], at ¶ 31, citing *Billman*, 7th Dist. Monroe Nos. 12 MO 3, 12 MO 5 at ¶ 36. Contrary to the *Valentine* majority's claim, there is no indication the jury would believe its finding of guilt on one count of child endangering would require a conviction on another count of child endangering merely because it contained the same elements and the same date range. Furthermore, the Sixth Circuit does not rely on *Valentine* as precedent. *Miller,* 7th Dist., 2018-Ohio-3430, [118] N.E.3d 1094]. At ¶ 22, citing *Coles v. Smith*, 577 Fed.Appx. 502, 507-508 (6th Cir. 2014) (rejecting this argument by a defendant in a case of 43 undifferentiated counts of rape regarding his step-daughter as Valentine used an incorrect standard for habeas).

{¶27} In declining to follow *Valentine*, we found that Thomas had not offered any new arguments or new reasons why we should follow *Valentine*. 2020-Ohio-633, ¶ 17. We also cited to the victim's testimony that while he did not recall the exact number of times Thomas raped him because it was too many to count, he recalled that when he was nine, ten, eleven and twelve years old, Thomas raped him at least once per season, and once per season when he was thirteen years old. *Id.* at ¶ 18. We found that this sufficiently established each count of the charges. *Id.*

27

{¶28} The analysis in *Thomas* applies here as well since A.B.'s testimony is similar, but even more specific. A.B. testified that when appellant lived with her and her family during the dates identified in the indictment, he forced his penis inside of her vagina at least 10 times, put his mouth on her "private area" more times than she could count, but more than 10 times and less than 15, and digitally penetrated her more than five times. (Tr. at 191-193). She testified that these sexual acts would occur twice a week and sometimes more than once per day. (Tr. at 191).

{¶29} Further, even looking to *Valentine,* it is distinguishable from the instant case. In *Valentine*, the Sixth Circuit noted that the bill of particulars did not provide further differentiation among the rape counts alleged in the indictment. 395 F.3d at 629. Here, the bill of particulars provided differentiation as it identified acts of digital penetration, vaginal intercourse, anal intercourse, and oral sex, and stated that each of these acts occurred at least three times. Further, in *Valentine*, the Court found that the prosecution failed to present the factual bases for 40 separate incidents which took place and the victim testified to only "typical" abusive behavior and stated that the "typical" abuse happened 15 or 20 times. 395 F.3d at 632-633. Here, A.B. testified more specifically, indicating that appellant put his mouth on her vagina more times than she could count, but narrowed it down to more than 10 times and less than 15. (Tr. at 191-192). She testified that he put his penis inside of her vagina at least 10 times, and digitally penetrated her vagina more than 5 times. (Tr. at 192-193). She stated that appellant started these acts at the end of spring and over summer break, and once they began, they happened twice a week and sometimes more than once per day when her mother was at work. (Tr. at 191). She testified that all but one of the acts occurred in her mother's bedroom because it was the only room with a lock on the door, and one act took place in the dining room.

{¶30} NP Gorsuch also testified that she watched social worker, Ms. Wilson, conduct the forensic interview of A.B. (Tr. at 282). She testified A.B. disclosed that appellant would take her into her mother's bedroom while her mother was at work and exclude her siblings. (Tr. at 282). She testified that A.B. stated that in the bedroom, appellant would put his finger inside of her vagina, put his penis inside of her vagina and inside her anus, and he would put his mouth on her vagina. (Tr. at 282). NP Gorsuch testified that A.B. told Ms. Wilson that this would happen four to five times per week. (Tr. at 282).

{¶31} While the indictment, bill of particulars, and verdict forms were not as specific as appellant would like, they provided adequate notice and adequately informed him of the charges against him to conform with due process and double jeopardy concerns.

28

{¶32} Accordingly, appellant's first assignment of error lacks merit and is overruled.

*State v. Palmer*, 2021-Ohio-4639, 2021 WL 6276315, at **1-7.

In Ohio, a petitioner waives an alleged error when he fails to make a contemporaneous objection. *Osborne v. Ohio*, 495 U.S. 103, 124, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (recognizing Ohio's long-standing contemporaneous objection rule). The Sixth Circuit has held that Ohio's "contemporaneous objection rule is an adequate and independent state ground barring federal habeas review, *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005), and that plain-error review is not inconsistent with the procedural default." *Awkal v. Mitchell*, 613 F.3d 629, 648–649 (6th Cir. 2010) (citing *Lundgren*, 440 F.3d at 765); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). "The state court's plain error review did not constitute a waiver of the procedural default." *Mason v. Brunsman*, 483 F. App'x 122, 130–31 (6th Cir. 2012). *See also Shafer v. Wilson*, 364 F. App'x 940, 945 (6th Cir. 2010) (finding the State of Ohio expressly enforced its contemporaneous objection rule where "the last state court to render a reasoned opinion in this case, the Ohio Court of Appeals on direct appeal, noted the failure to object, applied plain-error review, and denied [appellant's] claims for relief.")

As the state appellate court correctly noted, Palmer's counsel did not raise these objections to the trial court. Accordingly, the first three elements of the *Maupin* test are satisfied as Palmer failed to comply with the contemporaneous objection rule, the state appellate court actually enforced the rule,[3] and the rule

---

[3] **Error! Main Document Only.**Palmer does not argue this claim is not defaulted because the state appellate court also addressed the merits of this claim. Even if he had, this argument would be without merit. The Sixth Circuit has held that a state court may actually enforce its procedural sanction and still review the merits of the case, as long as the decision on the merits is considered an alternative holding. *See Bowling v. Parker*, 344 F.3d 487 (6th Cir. 2003). *See also Harris v. Reed,* 489 U.S. 255, 264 n.10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (a state court "need not fear reaching the merits of a federal claim as an alternative holding."); *Gooden v. Jeffreys*, Case No. 1:05 CV 0075, 2005 WL 2002362 (N.D. Ohio 2005). Here, the record reflects the state appellate court enforced the procedural rule at issue (*i.e.*, the contemporaneous objection rule) since the state appellate court explicitly stated the claim would be reviewed for plain error and that plain error did not exist in this case. *See also Bacon v. Klee,* No. 15-2491, 2016 WL 7009108, at

29

constitutes an "independent and adequate" state ground on which the state can foreclose federal review. As set forth above, the state appellate court's plain error review did not waive the procedural default. As such, the Court finds Ground One is procedurally defaulted.

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren*, 440 F.3d at 763 (citing *Wainwright*, 433 U.S. at 87.)  As noted above, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin*, 434 F.3d at 417 (6th Cir. 2006) (quoting *Murray*, 477 U.S. at 488).  Prejudice does not occur unless the petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason*, 320 F.3d at 629.  Here, Palmer has neither presented any cause for his default, nor has he alleged ensuing prejudice.[4]  In addition, Palmer fails to present any new, reliable evidence to support a credible claim of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended Ground One be dismissed as procedurally defaulted.

---

*6 (6th Cir. Nov. 30, 2016) ("While the state trial court also addressed the merits of Bacon's claims, this review does not compromise the state trial court's procedural default ruling.")

[4] The Court notes that while Palmer raised a claim of ineffective assistance of trial counsel claim based on failure to object to "carbon copy" charges in his PCR petition, the state appellate court found that this claim was addressed on direct appeal; therefore, it was barred by *res judicata* and overruled.  (Doc. No. 7-1, Ex. 33.)  *See also State v. Palmer*, 2022-Ohio-2339, 2022 WL 2443273.  **Error! Main Document Only.**"[T]he Sixth Circuit has stated that *res judicata* 'is an actually enforced, adequate and independent state ground upon which the Ohio state courts consistently refuse to review the merits of a defendant's claims.'" *Collins v. Warden, Ross Correctional Inst.*, No. 1:12 CV 1925, 2014 WL 575727, at *11 (N.D. Ohio Feb.11, 2014) (quoting *Powers v. Bobby*, 2008 WL 4823134 (N.D. Ohio Nov.3, 2008)).  *See also Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001); *Williams v. Bagley*, 380 F.3d 932, 966–67 (6th Cir. 2004); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).  Therefore, any claim of ineffective assistance of trial counsel is also procedurally defaulted and cannot serve to excuse the procedural default.

## 2.    Ground Two

In Palmer's second ground for relief, he argues he was denied due process and equal protection of the law when the trial court failed to instruct the jury on the lesser offenses of gross sexual imposition.  (Doc. No. 1 at 7.)

Respondent argues that, like Ground One, this claim is procedurally defaulted because Palmer failed "to object to the jury instruction on rape or request a GSI instruction."  (Doc. No. 7 at 32.)

Because Palmer failed to timely file a Traverse as ordered, and the Court struck his untimely filing, Respondent's arguments are uncontroverted.

On direct appeal, Palmer raised an argument regarding the failure to give a lesser included instruction on gross sexual imposition.  (Doc. No. 7-1, Ex. 12.)  In its decision, the state appellate court found Palmer had waived this argument at the trial level and conducted a "plain error" review of the issue:

> {¶33} Appellant's second assignment of error states:
>
> > The trial court erred and denied Appellant due process of law, equal protection and the right to have justice administered without denial when it failed to instruct the jury on the lesser offenses of gross sexual imposition. U.S. Const., amend. XIV, Ohio Const., art. I, §§ 1, 2, and 16.
>
> {¶34} Appellant contends that A.B.'s testimony was inconsistent and did not assign a specific act to a specific event. He asserts that A.B. denied that appellant put anything inside of her, then said he put his penis into her private area, and said that this happened only once, and then "sometimes." (Tr. at 185-192). He notes that no one testified as to oral penetration. Appellant acknowledges that a court is not required to give lesser-included or inferior offense instructions every time it is requested, but it must give such instructions if the evidence reasonably warrants in order to prevent a failure of justice. He states that failing to instruct on lesser offenses when the evidence warrants leaves the jury only the choices of convicting or acquitting in total, even though they may conclude that something happened, but not exactly what the evidence demonstrated. He contends that this happened here because the jury could only convict him of 12 counts of rape or acquit him, even if they believed something else happened based on A.B.'s testimony.

31

{¶35} We usually review the trial court's rulings on jury instructions under an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). However, appellant did not object to the jury instructions or request a lesser-included instruction at trial. Crim.R. 30 provides, in pertinent part: "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error should be noticed and corrected, "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings' [.]" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936).

{¶36} GSI is a lesser-included offense of rape. *State v. Foust*, 150 Ohio St.3d 137, 161-162, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 54, citing *State v. Johnson,* 36 Ohio St.3d 224, 226, 522 N.E.2d 1082 (1988). However, merely because an offense can be a lesser-included offense of another does not mean that a court must instruct on both offenses whenever the greater offense is charged. *Id.* A lesser-included offense charge is required only when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 21, quoting *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988). The court must view the evidence in favor of the defendant when determining whether to include a lesser-included offense jury instruction. *Wine*, 2014-Ohio-3948, quoting *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 37.

{¶37} The difference between rape and GSI is that rape requires proof of "sexual conduct" and GSI requires proof of "sexual contact." "Sexual conduct" includes "sexual contact," and therefore GSI under R.C. 2907.05(A)(4) is a lesser-included offense of the offense of rape under R.C. 2907.02(A)(1)(b). R.C. 2907.01(A) defines "[s]exual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(B) defines "[s]exual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶38} Viewing the evidence in a light most favorable to appellant, it appears that a GSI charge was not required as a lesser-included offense to

the rape charges. In *State v. Johnson*, 36 Ohio St.3d 224, 522 N.E.2d 1082 (1988), the Ohio Supreme Court held that a criminal defendant is not entitled to a lesser-included offense jury instruction on GSI where he denies any participation in the alleged offense, and the jury, in its consideration of the defense "could not reasonably disbelieve the victim's testimony as to 'sexual conduct' and, at the same time, consistently and reasonably believe her testimony of mere 'sexual contact.'" If the trial court would provide such an instruction, it would allow the jury to make an unreasonable conclusion. *Id.* at 227.

{¶39} We followed the holding of *Johnson* in *State v. Wright*, 7th Dist. Jefferson No. 97 JE 12, 2000 WL 652542, at *3-4 (May 15, 2000), where we found no merit to Wright's assertion that the trial court erred by failing to charge the jury on the lesser-included offense of GSI as to his rape charge. We found that the jury instruction was not required in such situations because "'it is difficult to perceive how a person could engage in sexual conduct and not at the same time be involved in sexual contact.'" *Wright*, 2000 WL 652542, at *4, quoting *State v. Gregory,* 2d Dist. Montgomery No. 14187 (Aug. 19, 1994).

{¶40} Applying *Wright,* we find that the trial court did not err in the instant case when it failed to charge the jury with the lesser-included offenses of GSI on appellant's rape charges. Appellant denied any participation in the offenses. He testified that A.B. was never in his care alone and when her mother worked, A.B. and her siblings were placed either in daycare or with their grandmother. (Tr. at 357, 372, 384-385). Further, the testimony of A.B., her mother, and NP Gorsuch did not reasonably support acquittal on the rape charges. As mentioned earlier, A.B. testified to appellant putting his mouth on her vagina more than 10 times and less than 15, putting his penis inside of her vagina at least 10 times, and digitally penetrating her vagina more than 5 times. She recalled when this conduct began and stated that these acts happened twice a week and sometimes more than once per day, when her mother was at work and once when her mother was home. A.B.'s mother testified that when she worked, appellant watched her children. (Tr. at 143). She also testified that A.B. disclosed to her that every day while she was at work, and sometimes multiple times per day, appellant sexually molested A.B. anally and vaginally, and touched her or inserted his finger into her vagina. (Tr. at 16). NP Gorsuch testified that A.B. disclosed that appellant would take her into her mother's bedroom when her mother was at work and he would exclude her siblings. (Tr. at 282). She stated that in the bedroom, appellant put his finger inside of her vagina, put his penis inside of her vagina and inside her anus, and put his mouth on her vagina. (Tr. at 282). NP Gorsuch testified that A.B. stated that this would happen four to five times per week. (Tr. at 282).

{¶41} There are some inconsistencies in A.B.'s testimony as she did initially testify that appellant did not penetrate her vagina with his penis

or engage in anal intercourse with her. However, her later testimony, and the testimony of her mother and NP Gorsuch, provided evidence that did not reasonably support an acquittal on 12 counts of rape and guilty verdicts on only GSI. Thus, adequate evidence of sexual conduct was presented to sustain the rape charges.

{¶42} Accordingly, appellant's second assignment of error lacks merit and is overruled.

*State v. Palmer*, 2021-Ohio-4639, 2021 WL 6276315, at **7-9.

As set forth above, a petitioner waives an alleged error when he fails to make a contemporaneous objection. *Osborne*, 495 U.S. at 124 (recognizing Ohio's long-standing contemporaneous objection rule). The Sixth Circuit has held that Ohio's "contemporaneous objection rule is an adequate and independent state ground barring federal habeas review, *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005), and that plain-error review is not inconsistent with the procedural default." *Awkal*, 613 F.3d at 648-49. "The state court's plain error review did not constitute a waiver of the procedural default." *Mason*, 483 F. App'x at 130–31. *See also Shafer*, 364 F. App'x at 945 (6th Cir. 2010) (finding the State of Ohio expressly enforced its contemporaneous objection rule where "the last state court to render a reasoned opinion in this case, the Ohio Court of Appeals on direct appeal, noted the failure to object, applied plain-error review, and denied [appellant's] claims for relief.")

As the state appellate court correctly noted, Palmer's counsel did not raise these objections to the trial court. Accordingly, the first three elements of the *Maupin* test are satisfied as Palmer failed to comply with the contemporaneous objection rule, the state appellate court actually enforced the rule, and the rule constitutes an "independent and adequate" state ground on which the state can foreclose federal review. As set forth above, the state appellate court's plain error review did not waive the procedural default. As such, the Court finds Ground Two is procedurally defaulted.

34

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren*, 440 F.3d at 763 (citing *Wainwright*, 433 U.S. at 87.) As noted above, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin*, 434 F.3d at 417 (6th Cir. 2006) (quoting *Murray*, 477 U.S. at 488). Prejudice does not occur unless the petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason*, 320 F.3d at 629. Here, Palmer has neither presented any cause for his default, nor has he alleged ensuing prejudice.[5] In addition, Palmer fails to present any new, reliable evidence to support a credible claim of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended Ground Two be dismissed as procedurally defaulted.

### 3.      Grounds Three, Four, Six, and Eight

In Ground Three, Palmer argues he was denied due process when he "was convicted of 12 counts of rape where the evidence was insufficient to support rape." (Doc. No. 1 at 8.) In Ground Four, Palmer argues he was denied due process and equal protection of the law when the State "was permitted to introduce irrelevant inflammatory 'other act' evidence." (*Id.* at 9.) In Ground Six, Palmer argues that he was denied due process when the State "was permitted to impermissibly . . . bolster the testimony and vouch for the credibility of the declarant in the guise of a medical 'diagnosis' of sexual abuse." (*Id.* at 12.) In Ground

---

[5] The Court that Palmer failed to raise an ineffective assistance of trial counsel claim based on failure to object to the jury instructions or request an instruction on gross sexual imposition. Therefore, any claim of ineffective assistance of trial counsel is also procedurally defaulted and cannot serve to excuse the procedural default.

Eight, Palmer argues that the trial court erred in "failing to record all sidebars as required by C.R.22, thus depriving Petitioner of the liberty secured by U.S. CONST., amend. XIV." (*Id.*)

Respondent argues that Grounds Three, Four, Six, and Eight are procedurally defaulted, as Palmer failed to raise these claims to the Ohio Supreme Court.  (Doc. No. 7 at 41, 47-48, 60, 67.)

Palmer appears to argue that ineffective assistance of appellate counsel serves as cause and prejudice to excuse the procedural default, as he states that appointed appellate counsel raised these grounds to the state appellate court "but for some reason unknown to appellant did not raise this ground in the memorandum for jurisdiction to the Ohio Supreme Court."  (Doc. No. 1 at 9-10, 12-13.)

While the ineffective assistance of appellate counsel may constitute cause for a procedural default, *Murray*, 477 U.S. at 488, 106 S.Ct. 2639, Palmer did not have a constitutional right to counsel when filing his appeal with the Supreme Court of Ohio.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal as of right, and no further.").  Because he did not have a constitutional right to counsel when filing his appeal with the Supreme Court of Ohio, he cannot claim constitutional right to the effective assistance of that counsel.

As Palmer is unable to establish cause to excuse his procedural default, the Court declines to address the issue of prejudice.  *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) ("When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice."); *Group v. Robinson*, 158 F. Supp. 3d 632, 651 (N.D. Ohio Jan. 20, 2016).

### 4.    Ground Five

As part of his fifth ground of relief, Palmer argues that trial counsel "failed to object to and request a limiting instruction to prejudicial and immaterial other acts evidence, and that he failed to file a motion to suppress Palmer's statements to police."  (Doc. No. 1 at 12.)

Respondent argues this portion of Ground Five is procedurally defaulted, as Palmer failed to raise this claim to the Ohio Supreme Court.  (Doc. No. 7 at 53.)

A careful review of the record reveals that while Palmer raised his claim of ineffective assistance of trial counsel based on counsel's failure "to object to and request a limiting instruction as to prejudicial and immaterial other acts evidence" and failure to file a motion to suppress with the state appellate court (Doc. No 7-1, Ex. 12), Palmer failed to present these claims to the Supreme Court of Ohio.  (Doc. No. 7-1, Ex. 18.)  The Court finds Palmer's failure to appeal these issues to the Supreme Court of Ohio resulted in a procedural default.

Here, Palmer has neither presented any cause for his default, nor has he alleged ensuing prejudice.[6] In addition, Palmer fails to present any new, reliable evidence to support a credible claim of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended this portion of Ground Five be dismissed as procedurally defaulted.

### 5.    Grounds Raised in 26(B) Application

In his Amended Petition, Palmer raised the following grounds for habeas relief that he asserts he presented in his 26(B) Application: (1) trial counsel failed to object to the admission of testimonial hearsay; (2) trial counsel failed to object to the admission and eliciting of an actual diagnosis of abuse from an expert witness; (3) trial counsel failed to object to the State's improper closing argument which suggested Petitioner was guilty because he was prosecuted and indicted; (4) trial judge prejudicially eroded Petitioner's

---

[6] While ineffective assistance of appellate counsel may constitute cause for a procedural default, *Murray*, 477 U.S. at 488, 106 S.Ct. 2639, Palmer did not have a constitutional right to counsel when filing his appeal with the Supreme Court of Ohio.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal as of right, and no further.").  Because he did not have a constitutional right to counsel when filing his appeal with the Supreme Court of Ohio, he cannot claim constitutional right to the effective assistance of that counsel.

presumption of innocence right by asking a highly misleading and incriminating question to jurors; (5) trial counsel failed to object to Petitioner being repeatedly compelled to either call other witnesses liars or to call himself the liar in the case; (6) trial counsel was prejudicially ineffective for having unnecessarily informed the jury of Petitioner's pretrial incarceration; (7) the State's Golden Rule argument reprehensibly impaired Petitioner's right to a fair trial; (8) trial counsel failed to object to hearsay being asserted for its truth value; (9) the State was erroneously permitted to introduce statements that were hearsay and did not meet a hearsay exception rule; and (10) the trial judge abused its discretion by permitting over objections improper testimony regarding Petitioner's past sexual moments. (Doc. No. 27.)

Because Palmer failed to timely file a Traverse that addressed all of his claims, including those in his Amended Petition, as ordered, and the Court struck his untimely filing, Respondent did not have the opportunity to address these claims.

However, a review of the record reveals that Palmer failed to appeal the denial of his 26(B) Application to the Supreme Court of Ohio. Palmer has neither presented any cause for his default, nor has he alleged ensuing prejudice. In addition, Palmer fails to present any new, reliable evidence to support a credible claim of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended these claims be dismissed as procedurally defaulted.

## IV.    Non-Cognizable Claim

In Ground Nine, Palmer argues that he "was denied due process and the right to a fair trial because of the effect of cumulative errors." (Doc. No. 1 at 13.)

Respondent argues that this claim is non-cognizable on habeas review. (Doc. No. 7 at 69.)

The Sixth Circuit recently reaffirmed the unavailability of cumulative error as a ground for habeas relief: "Lastly, Stober claims that the cumulative effect of the alleged errors he identifies should entitle him

38

to relief, but this court has held that 'post-AEDPA [(Antiterrorism and Effective Death Penalty Act)], not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief.' *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *see also Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.")." *Stober v. Warden*, No. 19-3980, 2020 WL 1698589, at *4 (6th Cir. February 18, 2020). Therefore, Ground Nine is non-cognizable.

## V. Review on the Merits

### A. Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). Indeed, the Supreme Court has indicated that circuit precedent

does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v. Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it

would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1.    Ground Five

As part of his fifth ground for relief, Palmer argues as follows:

> When an accused questions the effectiveness and adequacy of counsel, it is the duty of the trial judge to inquire into the complaint, and to make such inquiry a part of the record. Petitioner Palmer complained of the adequacy of his trial counsel to the trial judge in a letter in June of 2019. Palmer also complained directly to counsel in a letter. After receiving both letters, counsel entered a motion to withdraw as counsel, asserting irreconcilable differences between he and Palmer. A hearing was held the same day where counsel was permitted to state his version of whatever issues. After asking Palmer what he had to say, the judge cut him off before he could utter one complete sentence. The judge failed to make a good faith investigation into whether there had been such a dissolution of the attorney-client relationship that they could not work effectively so that Palmer could receive effective counsel and therefore have a fair trial. Please consult exhibits 2 and 3 of Palmer's post-conviction evidence.

(Doc. No. 1 at 12.)

Respondent argues that "[s]ince there is no clearly established Supreme Court precedent on a duty to inquire, the state court decision cannot be considered contrary to clearly established Supreme Court precedent warranting habeas relief."  (Doc. No. 7 at 59.)

Because Palmer failed to timely file a Traverse as ordered, and the Court struck his untimely filing, Respondent's arguments are uncontroverted.

41

Palmer raised this claim to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 7-1, Ex. 12, 18.)  The state appellate court considered this claim on the merits and rejected it as follows:

{¶60} In his fifth assignment of error, appellant asserts:

Appellant was denied a fair trial because of the ineffectiveness of his trial counsel.

{¶61} Appellant asserts that counsel was ineffective because he admitted that he was unprepared for trial and failed to file a motion to suppress appellant's statement to police, which was used against him. He also argues that his counsel failed to file a motion in limine concerning "other acts" evidence, failed to object to such evidence, and failed to request a limiting instruction at trial. Finally, appellant asserts that the trial court was angry and annoyed at him, which caused the court to unreasonably find that he was trying to "play the system" by requesting new counsel in order to delay his trial. Appellant concludes that counsel violated *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and prejudice resulted because the verdict would have been different, especially when no physical evidence existed. He cites *Hodge v. Hurley*, 426 F.3d 386 (2005), as support for reversal when counsel failed to object to comments by the prosecutor and no physical evidence confirmed illicit sexual activity.

{¶62} The test for determining whether counsel was ineffective is: (1) whether counsel's performance was deficient; and (2) if so, whether the deficiency resulted in prejudice. *State v. Harrison*, 7th Dist. Jefferson No. 19 JE 0009, 2020-Ohio-3624, ¶ 16, citing *State v. White*, 7th Dist. Jefferson No. 13 JE 33, 2014-Ohio-4153, ¶ 18, citing *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 107. Appellant must prove both prongs of the test and if one prong is not met, this Court need not address the remaining one. *Harrison*, 2020-Ohio-3624, at ¶ 17, citing *Strickland*, 466 U.S. at 697. In order to meet the deficient performance prong, appellant must show that counsel's performance fell below an objective standard of reasonable representation. *Id.* In order to meet the prejudice prong, appellant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* In Ohio, a licensed attorney is presumed competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). Further, a reviewing court is highly deferential to trial counsel's strategy and must indulge in a strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989).

{¶63} On July 17, 2019, appellant's counsel filed a motion to withdraw as counsel, citing irreconcilable differences, and indicating that he would stop preparing the case. The trial court held a hearing on that same date, with appellant, his counsel, and the assistant prosecuting attorney present. Appellant's counsel stated that he had received a letter from appellant about his request for counsel to withdraw. (Tr. at 3). Counsel took a moment at the hearing to speak with appellant and after doing so, he stated that "Mr. Palmer now tells me that he's not necessarily asking that I not be his lawyer." (Tr. at 3). Counsel explained that appellant wanted him to file a motion for a speedy trial under R.C. 2945.72, but he ethically could not do so because appellant had already signed a speedy trial waiver. (Tr. at 3). Counsel told the court that appellant thought that he was signing a waiver of speedy trial to a specific date and had he known he was waiving speedy trial rights as to any date, he would not have signed it. (Tr. at 3).

{¶64} The court asked appellant's counsel if the waiver was initialed by the court, and counsel responded that it had. (Tr. at 3). The court asked appellant whether he wanted to put the court's bailiff on the stand to testify that appellant's counsel had reviewed the waiver with appellant. (Tr. at 4). Counsel replied that it was not necessary. (Tr. at 4). The following then took place on the record:

> THE COURT: Well, then how could he not know -- Mr. Palmer, how could you not know you're signing a waiver if somebody asks you the question?
>
> THE DEFENDANT: The way --
>
> THE COURT: I'm tired of this crap. Everybody in that jail says they want a new attorney to delay their trial. Guess what? It's not going to happen. You're going to trial on Monday, and you could tell all your little friends back at that Justice Center if they want to pull this stunt, too, they're not getting a new attorney either.

(Tr. at 4). Appellant's counsel informed the court that upon receiving appellant's letter, he "maybe wrongfully" contacted other people to tell them he was not going forward with representing appellant and he "put the file down. I will not be prepared to go Monday." (Tr. at 5). Counsel stated that he could be prepared to go to trial in a week, on July 24, 2019, but the trial court continued the trial date only until July 22, 2019. (Tr. at 5).

{¶65} However, on July 22, 2019, the trial court issued a judgment entry overruling the motion to withdraw as counsel and continued the July 22, 2019 trial date to September 3, 2019. (7/22/19 J.E.). Since the trial court ultimately continued the trial date, no prejudice exists as to counsel's failure to fully prepare for trial. Further, appellant's counsel did file the

motion to withdraw, but the court denied it. Accordingly, we find that counsel did not deficiently perform.

{¶66} As to the trial court's denying the motion to withdraw, the court appeared to become angry and should have inquired further into the motion. However, the court allowed appellant and his counsel time to speak off the record, and appellant did not object or challenge counsel's subsequent statement to the court that appellant was not requesting that counsel withdraw, but rather, he was requesting that counsel file a motion to withdraw the speedy trial waiver he had signed. Moreover, appellant does not identify to us any reason for requesting the withdrawal of counsel and he fails to explain how the court abused its discretion in denying the motion. He merely states in his appellate brief that he "may, or may not, have had a legitimate reason for seeking the removal of counsel." This Court can only rely upon the evidence in the record on appeal. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 171. From the record, we find that the trial court committed no prejudicial error by failing to inquire further of appellant about the motion to withdraw or by denying the motion based upon counsel's representations at the hearing.

{¶67} As to appellant's assertion that counsel was ineffective by not filing a motion to suppress appellant's statement to the police, this failure alone does not constitute per se ineffective assistance of counsel. *State v. Patterson*, 8th Dist. No. 105265, 2017-Ohio-8318, 99 N.E.3d 970. When a defendant asserts ineffectiveness of counsel based upon a failure to file a suppression motion, the defendant must prove there was a valid ground to suppress the evidence in dispute. *Spaulding,* 151 Ohio St.3d 378, 2016–Ohio–8126, 89 N.E.3d 554, at ¶ 94, citing *State v. Brown*, 115 Ohio St.3d 55, 2007–Ohio–4837, 873 N.E.2d 858, ¶ 65; *see also State v. Dawson*, 7th Dist. Mahoning No. 15 MA 0081, 2017-Ohio-5709. The defendant must also show there is a reasonable probability the result of the trial would have been different if the evidence had been suppressed. *Id.*

{¶68} It appears that appellant is talking about his statements to Sergeant Hillman during an interview on May 8, 2018, after appellant read the Miranda warnings and signed a waiver. (Tr. at 323-324). Sergeant Hillman testified at trial that appellant initially denied residing at any time in Boardman, Ohio, where A.B. lived, and then he stated that he lived with A.B., her siblings, and her mother for two to three months in Boardman. (Tr. at 324). Appellant denied to Sergeant Hillman that he was ever left alone with any of the children for any period of time when he resided with them. (Tr. at 324-325). Appellant offers no valid grounds for filing a motion to suppress and he makes no showing of a reasonable probability that the verdict would have been different if the statements were suppressed. Thus, this assertion is without merit.

44

{¶69} Appellant lastly asserts that his counsel was ineffective by failing to object, failing to file a motion in limine, and failing to request a limiting instruction as to "other acts" evidence presented at trial. However, as previously explained, the acts that appellant identifies are not "other acts" evidence under Evid. R. 404 and thus counsel did not deficiently perform by failing to object or file motions concerning this evidence.

{¶70} Accordingly, appellant's fifth assignment of error lacks merit and is overruled.

*State v. Palmer*, 2021-Ohio-4639, 2021 WL 6276315, at **12-14.

"The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of Counsel for his defense.' U.S. Const. Amend. VI. The Supreme Court has held that although the Sixth Amendment does not entitle an indigent criminal defendant to his counsel of choice, it does guarantee him a right to adequate representation. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)." *Cody v. McConahay*, 2022 WL 1572573, at *6 (6th Cir. Jan. 7, 2022). "[T]he right to counsel does not include a right to a meaningful or peaceful relationship between counsel and the defendant." *See Morris v. Slappy*, 461 U.S. 1, 13 (1983). As the Sixth Circuit explained in a case where the petitioner also argued the trial court had a duty to inquire into whether he had good cause for requesting new counsel:

In order for Brooks to prevail, he must demonstrate that the state court decision was contrary to clearly established law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). For the purposes of AEDPA, however, the clearly established law does not indicate that the trial court had a duty to conduct a good cause inquiry before determining whether to grant or deny Brooks's request for new counsel. Indeed, the Supreme Court has held that the Sixth Amendment "guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale,* 491 U.S. at 624, 109 S.Ct. 2646. Brooks, therefore, had a right to be represented by the counsel of his choice only if he could afford to hire that counsel, or if that counsel was willing to represent him regardless of his inability to pay. Here, Brooks made no mention of having retained or planning to retain counsel on his own. Instead, he requested that his court appointed lawyer be replaced. Given these facts, the new counsel Brooks

45

sought would have been, in all likelihood, court appointed. To the extent that Brooks would invoke *Caplin* because his representation was inadequate, we are unpersuaded. Nothing before us suggests that Brooks's counsel did not represent him "adequately." *Id.* Brooks sought a new attorney because he did not receive discovery materials in a manner he found timely and because his attorney did not meet with him as often as he would have liked. These allegations do not implicate the Supreme Court's instruction that those with no means to hire counsel do, indeed, have just cause for constitutional complaint if their representation is subpar and they suffer prejudice as a result. *See Evitts v. Lucey,* 469 U.S. 387, 395–96, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

Brooks directs us to *Benitez v. United States,* in which we stated that once a defendant wishing to substitute counsel brings "any serious dissatisfaction ... to the attention of the district court," the court "is obligated to inquire into the defendant's complaint and determine whether there is good cause for the substitution." 521 F.3d 625, 632 (6th Cir.2008) (internal quotations and citations omitted). True though this may be, and regardless whether the district court's inquiry was sufficient under *Benitez,* we are not permitted to base our decision on that case. Rather, as we have explained, Brooks's habeas petition rises or falls on the existence of clearly established law as determined by the Supreme Court. Because Brooks offers no such law supporting his claim, and we are unaware of any such law, he has not shown that he is entitled to relief under AEDPA. *See* 28 U.S.C. § 2254(d)(1).

*Brooks v. Lafler*, 454 F. App'x 449, 452 (6th Cir. 2012).

Because there is no clearly established Supreme Court precedent on a duty to inquire, Palmer fails to show he is entitled to habeas relief under the AEDPA. Therefore, the undersigned recommends the Court deny this portion of Ground Five.

### 2. Ground Seven

In Ground Seven, Palmer argues he was "denied due process and the effective assistance of counsel because the state was permitted to make repeated references to the declarant as 'the victim,' to which trial counsel failed to object to." (Doc. No. 1 at 12.)

Respondent argues that to the extent Palmer is raising a prosecutorial misconduct claim, Palmer fails to show the state appellate court's decision was contrary to *Darden v. Wainwright*, 477 U.S. 163 (1986).

(Doc. No. 7 at 64, 66.)  Respondent argues that Palmer also fails to show that the state appellate court's decision "involved an unreasonable application of *Strickland*."  (*Id.* at 66.)

Because Palmer failed to timely file a Traverse as ordered, and the Court struck his untimely filing, Respondent's arguments are uncontroverted.

Palmer raised this claim to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 7-1, Ex. 12, 18.)  The state appellate court considered this claim on the merits and rejected it as follows:

> {¶81} Petitioner's seventh assignment of error asserts:
>
>> Appellant was denied due process and the effective assistance of counsel because there were repeated references made to the child as the "victim," to which trial counsel failed to object.
>
> {¶82} Petitioner broadly asserts that repeated references at trial to A.B. as the "victim" is similar to *State v. Almedom*, 10th Dist. Franklin No. 15AP-852, 2016-Ohio-1553, where the Tenth District Court of Appeals unanimously reversed the conviction of a defendant in a child sexual abuse case based upon an aggregate of comments and defense counsel's deficiency. However, appellant in this case fails to identify who made the references to A.B. as a victim and he fails to cite to the portions of the transcript where the references were made. Loc.R. 16(E)(5) provides that references to the record and citations to authorities are required and sets forth that (a) "each contention supporting an issue presented for review shall be followed by references to the relevant parts of the record and citations to the relevant authorities." It is not this Court's "'duty to search the record for evidence to support an appellant's argument as to alleged error.'" *State v. Pyles,* 4th Dist. Scioto No. 2018-Ohio-4034, ¶ 45, quoting *Lias v. Beekman*, 10th Dist. Franklin No. 06AP1134, 2007-Ohio-5737, ¶ 6, quoting *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶ 94 (10th Dist.).
>
> {¶83} Appellee identifies that the assistant prosecutor referred to A.B. as a victim one time during voir dire. (Tr. at 61). Appellee also notes that Detective Hillman referred to A.B. as a victim 4 times in his testimony. (Tr. at 313, 316, 318, 322). Appellee contends that *Almedom* is distinguishable because it involved defense counsel's failure to object to, among other things, the trial judge's repeated use of the word "victims" to describe the minor girls that the defendant was accused of sexually abusing. Appellee also cites *State v. Aboytes*, 11th Dist. Lake No. 2020-L-001, 2020-Ohio-6806, ¶ 181 where the Eleventh District distinguished *Almedom* because it involved the trial judge's repeated references to the girls as "victims" and noted that the Tenth District had more recently

47

recognized that other courts had found that the use of the word "victim" is not the same as expressing an opinion that a defendant is guilty of a crime. *Aboytes*, supra, citing *State v. Madden*, 10th Dist. Franklin No. 16AP-259, 2017-Ohio-8894, 100 N.E.3d 1203, ¶ 33.

{¶84} Appellant's assignment of error lacks merit. Again, in order to show the ineffective assistance of trial counsel, appellant must show: (1) that counsel's performance was deficient; and (2) if so, that the deficiency resulted in prejudice. *Harrison,* 7th Dist. Jefferson No. 19 JE 0009, 2020-Ohio-3624, ¶ 16, citing *White*, 7th Dist. Jefferson No. 13 JE 33, 2014-Ohio-4153, ¶ 18, citing *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both prongs must be met and if one is not met, the appellate court does not need to address the remaining one. *Harrison*, 2020-Ohio-3624, at ¶ 17, citing *Strickland*, 466 U.S. at 697.

{¶85} Although appellant asserts that *Almedom* is almost a "carbon copy" of the instant case, *Almedom* is easily distinguishable. *Almedom* involved charges against the defendant for the sexual abuse of three girls under the age of 13 and the defendant denied having any sexual contact with the girls. 2016-Ohio-1553, at ¶ 2. As the court explained, it was the trial judge in that case who referred to the girls as "victims" before the jury on two occasions. *Id.* at ¶ 3, 4. The assistant prosecutor also referred to the girls as "victims" once in jury selection. *Id.* at ¶ 4.

{¶86} In vacating the verdict, the appellate court found that defense counsel deficiently performed and resulting prejudice occurred from "the conduct of defense counsel linked with the prejudicial comments of the trial judge when added to those of the assistant prosecuting attorney during jury selection undermined the proper function of the adversarial process." *Id.* at ¶ 10. The appellate court held that the defendant was portrayed as a "disgusting person" who sexually abused children well before the presentation of evidence. *Id.* at ¶ 11. It reasoned that the trial judge, who was the ultimate authority in the courtroom, told the jury repeatedly that the defendant victimized the girls and defense counsel "stood idly by and made no objection to the trial judge's accusation that his client was a child abuser." *Id.*

{¶87} The appellate court also cited to counsel's numerous other deficiencies, such as failing to move for a mistrial and failing to request that the court tell the jury that it could not consider part of the testimony of one of the children after her charges against the defendant were dismissed. *Id.* at ¶ 7. The appellate court noted that trial counsel also failed to file any pre-trial motions except a bill of particulars even though appellant was facing life in prison, and even though one of the girls was six years old and counsel should have filed a motion to determine her competency. *Id.* The court noted that defense counsel also repeatedly

48

failed to object to direct examination questions and to "huge" portions of the State's evidence. *Id.* at ¶ 8.

{¶88} In the instant case, appellant does not assert that the trial judge made any reference to A.B. as a victim. Further, while the prosecution referred to A.B. as a victim once in voir dire, and Detective Hillman referred to her in this capacity four times, it does not rise to the level of prejudice as that in *Almedom* since *Almedom* was primarily concerned with the trial judge's references and the numerous other deficiencies of defense counsel in that case.

{¶89} In addition, the Tenth District distinguished *Almedom* in *State v. Nichols,* Franklin Nos. 19AP-113, 19 AP-116, 2020-Ohio-4362, ¶ 39. There, the defendant's counsel argued that the prosecutor's references to the minor as the victim constituted prosecutorial misconduct and was grounds for a mistrial. The *Nichols* Court found *Almedom* "readily distinguishable" from the case before it because "[fi]irst and foremost," the trial judge was the one who made references to the minor as a victim, not the prosecutor. *Id.* The court explained that the judge is neutral and detached on matters before it, but a prosecutor does not have to be. *Id.* The court further found that the improper references in *Almedom* were made throughout the entire trial, while the references by the prosecutor in the case before it were only in rebuttal closing argument. *Id.* The court found no error by the prosecutor in referring to the minor as a victim in closing because the prosecutor is permitted to comment on what the evidence has shown and the inferences that could be made from it. *Id.*

{¶90} Similar to this case, the trial judge did not make references to A.B. as a victim. Further, while the prosecutor made one such reference, it was in voir dire. While Detective Hillman did so four times, it does not appear that these references, even combined, undermined the adversarial process or produced an unjust result. In *State v. Aboytes*, 11th Dist. Lake No. 2020-L-001, 2020-Ohio-6806, the Eleventh District Court of Appeals held that trial counsel was not ineffective for failing to object to references to the minor as a victim during trial because unlike *Almedom,* trial judge did not make the references, the references were not made throughout the trial, and the references did not undermine proper functioning of the adversarial process so that court could be sure a just result was produced.

{¶91} Accordingly, appellant's seventh assignment of error lacks merit and is overruled.

*State v. Palmer*, 2021-Ohio-4639, 2021 WL 6276315, at **16-18.

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his

counsel's conduct was so below acceptable standards of representation that counsel was not functioning as

"counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689.  *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at —— ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105. *See also Kennedy v. Warren*, 428 F. App'x 517, 520 (6th Cir. 2011); *Phillips v. Sheldon*, 2014 WL 185777, at **14-15 (N.D. Ohio Jan. 16, 2014).

Here, the Court finds the state appellate court reasonably determined trial counsel was not ineffective. As the state appellate court found, the prosecutor made one reference to the child as a victim during voir dire, and Detective Hillman referred to the child as a victim four times during his testimony. Palmer makes no showing that the result of the proceeding would have been different but for these isolated references.

As the Supreme Court made clear in *Harrington*, "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." 562 U.S. at 105. Under this deferential standard, for all the reasons set forth in this Report and Recommendation, the Court finds the state appellate court reasonably determined trial counsel was not ineffective for failing to object to the references to the child as a victim.

It is therefore recommended that Ground Seven be DENIED.

### 3. Claims Raised in PCR Petition

In his Amended Petition, Palmer raised the following grounds for habeas relief that he asserts he presented in his PCR Petition: (1) trial counsel intentionally misled Petitioner to unknowingly waive his right to a fast and speedy trial; (2) trial counsel failed completely to conduct any investigation; (3) trial counsel failed to present any rebuttal expert testimony; (4) trial counsel failed to timely object to the carbon copy charges; (5) trial counsel failed to impeach adverse witnesses with available impeachment evidence; (6) trial counsel failed to object to the State's racially motivated jury strike; (7) trial counsel completely failed to convey the prosecution's plea to client; and (8) Petitioner was denied a fair trial and due process due to cumulative errors. (Doc. No. 27 at 4.)

51

Because the Amended Petition was filed after the Return of Writ and Palmer failed to timely file a Traverse as ordered, Respondent did not have the opportunity to address these claims.

Palmer raised these claims to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 7-1, Ex. 30, 35.)  The state appellate court considered these claims on the merits and rejected them as follows:

> {¶16} Appellant's postconviction petition was filed with the trial court while his direct appeal was pending in this Court. Appellant raises many of the same errors in his petition that were addressed in his direct appeal. For example, Appellant's fourth assignment of error regarding trial counsel's alleged failure to object to the multiple rape counts in the indictment was addressed on direct appeal where we concluded that the indictment was sufficient to support multiple charges. *Palmer,* ¶ 31.
>
> {¶17} It is apparent Appellant's claims regarding ineffective assistance set forth in his fourth assignment of error are barred by *res judicata* and are overruled.
>
> {¶18} Regarding the remaining assignments of error, Appellant presents no evidence outside of the record in support of these claims. Instead, Appellant refers to multiple parts of the trial transcript and other evidence already in the record to support his arguments. As Appellant relies on no evidence outside of the record and all of the remaining claims in his petition could and should have been raised and addressed in his direct appeal, these claims were properly dismissed on the basis of *res judicata.* *Carosiello,* ¶ 28.
>
> {¶19} Appellant's petition appears to be merely a restatement and embellishment of the clams he argued on direct appeal. Not only does Appellant fail to provide any evidence in support of these claims dehors the record, the petition contains allegations that have no evidentiary or factual support at all. Appellant's claims amount to his speculation that a constitutional violation may have occurred and a desire for additional discovery, and are in no way based on any real evidence not contained in his record of trial. *Lawson,* 315.
>
> {¶20} All of the errors alleged, whether in the multiple claims of ineffective assistance of counsel or in the cumulative error allegations, are based on information already in the existing record in this case. These issues could and should have been raised by Appellant's new counsel in his direct appeal of this matter. Therefore, all of Appellant's assignments of error are barred by *res judicata* and are overruled. *Carosiello,* ¶ 28. The

> trial court's denial of Appellant's postconviction relief petition without a
> hearing is hereby affirmed.

*State v. Palmer*, 2022-Ohio-2339, 2022 WL 2443273, at **4-5.

As the state appellate court found, Palmer's ineffective assistance of trial counsel based on a speedy trial claim was part of Palmer's ineffective assistance of trial counsel claim raised on direct appeal.  (Doc. No. 7-1, Ex. 12.)  Likewise, Palmer raised a claim on direct appeal regarding the "carbon copy" charges.  (*Id.*)  While Palmer argued that the "carbon copy" charges claim he raised in his post-conviction petition was based on trial counsel's ineffectiveness for failing to object and therefore the state appellate court wrongly found he had presented this claim on direct appeal (Doc. No. 7-1, Ex. 35), the state appellate court found on direct appeal that the indictment, bill of particulars, and verdict forms were sufficient; therefore, trial counsel could not have been ineffective for failing to object.

As to Palmer's claim that trial counsel failed to object to the State's racially motivated jury strike, the only evidence *de hors* the record Palmer presented was a purported Facebook page for the juror at issue. (Doc. No. 7-1, Ex. 22, PageID# 462.)  While the state appellate court incorrectly stated Palmer failed to present any evidence outside of the record to support his claims, the state appellate court also found that Palmer's claims "are in no way based on any *real evidence* not contained in his record of trial."  *State v. Palmer*, 2022-Ohio-2339, 2022 WL 2443273, at *5 (emphasis added).  "There is nothing unreasonable in the state courts' determination that [Palmer] on direct appeal could have raised" this claim.  *Church v. Gray*, Case No. 5:18-cv-02389, 2020 WL 13064808, at *7 (N.D. Ohio Nov. 17, 2020), *report and recommendation adopted by* 2022 WL 664606 (N.D. Ohio Mar. 4, 2022).  As this Court recently explained:

> Generally, under Ohio law, "the introduction in a[ ] [post-conviction] petition of evidence *dehors* the record ... is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata." *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169, 171 (Ohio 1982). But to fall within this exception to the res judicata doctrine, "it is not sufficient for the petitioner to simply present evidence outside the record, he must also demonstrate that the evidence was not available at the time of his trial, or at the time of his direct appeal." *State v. Jones*, No. 2001-A-0072, 2002

53

> WL 31812945, at *3 (Ohio Ct. App. Dec. 13, 2002). Moreover, "[t]he outside evidence must meet a threshold level of cogency." *State v. Lynch*, No. C-010209, 2001 WL 1635760, at *3 (Ohio Ct. App. Dec. 21, 2001). It "must be 'competent, relevant and material' to the claim, be more than marginally significant, and advance the claim 'beyond mere hypothesis and a desire for further discovery.' ... [I]t must not be cumulative of or alternative to evidence presented at trial." *State v. Fears*, No. C-990050, 1999 WL 1032592, at *3 (Ohio Ct. App. Nov. 12, 1999) (citations omitted).

*Maxwell v. Shoop*, 2025 WL 886198, at *17 (N.D. Ohio Mar. 21, 2025). "Under the facts and circumstances of this case, this court cannot second-guess the state appellate court's finding that Petitioner's claim was barred by *res judicata*, without overruling a state court's interpretation of Ohio's appellate procedures." *Church*, 2020 WL 13064808, at *7.

Moreover, even if the state appellate court improperly imposed the procedural bar to this claim, the trial transcripts reveal that the juror at issue stated in voir dire that he had until recently worked as a corrections officer in a "supermax" Ohio State Penitentiary facility and that he had no children of his own. (Doc. No. 7-3 at PageID# 963-67.) In addition, the State exercised three other peremptory strikes in addition to the juror at issue, and the three additional jurors excused were women. (*Id.* at PageID# 961, 968, 982.) Therefore, the Court cannot say that trial counsel was ineffective for failing to object to the State's use of a peremptory strike to excuse the juror at issue.

Similarly, as to Palmer's claim that trial counsel completely failed to convey the prosecution's plea to Palmer, even if the state appellate court improperly imposed the procedural bar to this claim, the evidence *de hors* the record fails to show trial counsel did not convey the State's offer. Rather, the evidence in the file shows a letter informing Palmer of when counsel expected to receive the State's offer and that once counsel received it, he would convey it to Palmer. (Doc. No. 7-1, Ex. 20, PageID# 362-63.) Furthermore, the State presented this offer in open court before trial and Palmer raised no objection to having never been presented with the State's offer before. (Doc. No. 7-3 at PageID# 893-97.) In addition, Palmer rejected the plea offer in open court. (*Id.* at PageID# 897.)

54

For the reasons set forth above, Palmer's "cumulative errors" argument is non-cognizable on habeas review.

That leaves Palmer's claims that he received ineffective assistance of counsel because trial counsel failed completely to conduct any investigation, trial counsel failed to present any rebuttal expert testimony, and trial counsel failed to impeach adverse witnesses with available impeachment evidence.  To the extent that Palmer relies on trial counsel's file as evidence in support of these claims, the Court finds that the state appellate court's application of the *res judicata* bar to these claims was misplaced, as this evidence could not have been considered on direct appeal.

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a

55

petitioner's counsel was a matter of strategy.  *Id.* at 689.  *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Trial counsel's decision as to which theory or theories to advance at trial is a strategic choice that is given a high level of deference. *Davis v. Lafler*, 658 F.3d 525, 538 (6th Cir. 2011) (en banc). As the *Strickland* Court observed, "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

Palmer presents no evidence that defense counsel failed to adequately investigate or consider the option of presenting an expert or obtaining certain impeachment evidence, such as Palmer's mental health treatment records or the child's school records to undermine the State's case.  In fact, the evidence Palmer submitted shows trial counsel *did* consider hiring an expert and considered the information Palmer presented to him regarding his mental health.  (Doc. No. 7-1, Ex. 20, PageID# 368-69, 378.)  Moreover, defense counsel expended considerable time and effort toward *excluding* certain evidence that Palmer argues could have been used for impeachment but that trial counsel must have had concerns about:

> MR. ZENA: Your Honor, there was actually another motion filed, and it pertained to a couple of other things. On the witness list that I received from the state of Ohio, there are a couple issues. There is a probation – I'm sorry, parole officer for Mr. Palmer that has been listed as a potential witness. My concern was that that parole officer would get on the stand and talk about what Mr. Palmer was on parole for prior to Mr. Palmer having chosen or not chosen to testify. If that is the purpose of the parole officer, then I would ask that that be excluded.
>
> And, also, if the parole officer is being called for any other reason, such as Mr. Palmer's residency, where he was living at, that she not be identified as a parole officer. We would have to figure out some way to just call her, that she knew where he lived. The other thing, Your Honor,

56

that I filed on was related to some other witnesses that had appeared. On the witness list there are three either supervisors or teachers from the educational system of Boardman that I will assume were exactly -- and I know were exactly involved with this young lady who is the alleged victim in this case. If these people are going to give testimony, I would like to know prior to that testimony what the content of it was so the jury is not tainted. Also, if these people are relying on any particular school records or anything they said in the school supervision or anything like that, I would ask the court to order that I have those records ahead of time. I can't think of any other purpose other than conduct in school.

THE COURT: Ms. McLaughlin?

MS. McLAUGHLIN: With regard to Angela Bragg, she is the defendant's parole officer. State does not intend to call her in our case in chief. However, should during the defense's case they open the door for something potentially that would become relevant to call her, the state would notify the court of its intention to do that. With regard to teachers at the school, in the detective notes that were provided in discovery to Attorney Zena, we concede that Sergeant Hillman did talk to some of the staff at the school. That's why they're on the witness list. Again, state does not intend to call those witnesses in its case in chief.

MR. ZENA: Takes care of that, Judge.

(Doc. No. 7-3 at PageID# 899-902.)

Without proof defense counsel failed to adequately investigate or consider the option of presenting an expert or obtaining certain impeachment evidence, the Court must assume that counsel duly considered the possibility of a different strategy—including hiring a rebuttal expert and the use of certain impeachment evidence—but ultimately decided such evidence was not as strong and/or risked opening the door to other adverse evidence. *Maxwell*, 2025 WL 886198, at *25 (citing *Davis,* 658 F.3d at 538; *Carter v. Mitchell*, 443 F.3d 517, 532 (6th Cir. 2006) (holding that the defendant did not meet his burden under *Strickland* where he failed to produce any evidence that his counsel declined to investigate the defendant's background before deciding not to call family members to testify during the sentencing phase); *Wong v. Belmontes*, 558 U.S. 15, 25, 27–28, 130 S. Ct. 383, 175 L.Ed. 2d 328 (2009) (rejecting

57

petitioner's "'more-evidence-is-better' approach" where it would have opened door to evidence of past murders)).

Therefore, the undersigned recommends the Court dismiss Palmer's ineffective assistance of trial counsel claims based on his assertions that trial counsel failed completely to conduct any investigation, failed to present any rebuttal expert testimony, and failed to impeach adverse witnesses with available impeachment evidence as meritless.

## VI.  Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date: August 1, 2025                                          *s/ Jonathan Greenberg*
                                                             Jonathan D. Greenberg
                                                             United States Magistrate Judge


## <u>OBJECTIONS</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**